No. 9155.

## PROCTOR v. BALDWIN.

PROMISSORY NOTE.—*Commercial Paper.—Endorser and Endorsee.—Attorney's Fees.—Set-Off.*—A promissory note, payable at a bank in this State, is commercial paper, though it contain an agreement to pay attorney's fees; and set-off against the payee can not be pleaded by the maker to a suit upon it, by an endorsee without notice, for value and before maturity.

SAME.—*Collateral Security.—Bank Director.—Endorsement.—Consideration.—Notice.—Injunction.—Bona Fide Purchaser.*—Suit against the maker by a second *bona fide* endorsee of commercial paper, taken before maturity, who paid part of the price of the paper in cash, and for the balance agreed to cancel a debt held by him against his immediate endorser, which was never formally done.   The payee had delivered the note without endorsement, as collateral security, to a bank for a small loan; then he endorsed it to another, who took it in good faith, agreeing to pay this loan, after which the paper was returned to its place in the bank; and afterwards he endorsed it, without the bank's consent, to the plaintiff, who, though a director of the bank, had no knowledge that the bank had any right to the paper.   After the first endorsement, but without knowledge of it, the maker purchased a large note against the payee (who was and continued to be insolvent), upon which he at once began suit, getting a temporary injunction against negotiating the note of the defendant, pending which and with knowledge of it, the first endorsee made the endorsement and sale to the plaintiff, who knew nothing of the injunction.   After this, the maker's suit against the payee proceeded to judgment and a perpetual injunction.

*Held,* that the first endorsee was protected against defences, and that the plaintiff could recover the full amount of the paper sued for.

PRESUMPTION.—A bank director is presumed to have knowledge of the securities of the bank, but this presumption may be overcome by proof.

*Semble,* that if one, in consideration of the endorsement of commercial paper before maturity, agree to satisfy a note held by him against his endorser, he is entitled to protection as a *bona fide* purchaser, though he had not, in fact, cancelled or delivered up the note of his endorser.

From the Elkhart Circuit Court.

*J. M. Vanfleet* and *E. C. Bickel,* for appellant.

*J. H. Baker* and *J. A. S. Mitchell,* for appellee.

MORRIS, C.—This suit was brought by the appellee against the appellant upon the following note:

" $1,000.            GOSHEN, IND., Jan. 31st, 1880.

"Sixty days after date I promise to pay to the order .of Henderson Cole one thousand dollars, payable at the St. Joseph Valley Bank, Elkhart, Indiana, for value received, without any relief whatever from valuation or appraisement laws, with ten per cent. interest from after due, and attorney fees.

"WM. PROCTOR."

The complaint states that the payee sold and transferred the note, by endorsement, to one Myron E. Cole, before due, and that said Myron E. Cole, for value, endorsed the same, before maturity, to the appellee; that the note is due and unpaid. Copies of the note and endorsements are filed with the complaint.

The appellant answered the complaint in two paragraphs. The first states that the payee of the note had deposited the same with the First National Bank of Elkhart, Indiana, as collateral security for a loan of $50, and that he afterwards, on the 23d of February, 1880, sold the note to one Myron E. Cole, who was at the time a clerk in said bank; that said Henderson Cole at the time specially endorsed said note to the said M. E. Cole, who agreed to pay the $50 for which the bank held it as security, though it was not then due; that this was done clandestinely, without the knowledge or consent of the bank; that after the note had been endorsed M. E. Cole returned it to its proper place in the vaults of the bank, where it remained. It is further stated that on the 25th day of February, 1880, the appellant purchased a note executed by the said Henderson Cole, not knowing at the time that he had transferred the note sued on; that said Henderson was then, and for ten years last past had been, and is still, hopelessly insolvent and worthless; that the appellant at once commenced a suit in the Elkhart Circuit Court against the.said Henderson Cole on the note so purchased by him, and in said suit procured a temporary injunction prohibiting him from disposing of the note sued on until the further order of the court; that said M. E. Cole, after he and said bank

had notice of said injunction against the said Henderson Cole, took the note in suit from the bank and sold for its face and by endorsement transferred it to the appellee; that this was done without the knowledge or consent of the bank of which the appellee was at the time a director; that the appellee at the time he purchased said note had no actual knowledge of said injunction, nor of the fact that said note had been pledged to said bank; that on the 26th day of February, 1880, the appellee paid said M. E. Cole for said note $600, and agreed to cancel certain notes and indebtedness held by him against the said M. E. Cole, equal to the balance of said note purchased by him from said Cole; that on the same day the appellee was notified of said injunction, and was also notified by appellant not to pay anything further on said note to said M. E. Cole, which he has not done.   It is also averred that the appellant afterwards obtained judgment against the said Henderson Cole, in the suit commenced against him, for $4,135, and a decree declaring said injunction perpetual; that on the 22d day of April, 1880, the appellant tendered the appellee $603.50, in gold coin of the United States, being the amount of the money paid by him to the said M. E. Cole on and for said note, and the interest accrued thereon, which sum the pleader brings into court for the appellee; that the appellee refused to accept the sum so tendered.

The second paragraph states that Henderson Cole is indebted to the appellant in a sum exceeding the amount due on the note in suit, and offering to set off the same.

A demurrer was filed by the appellee to each paragraph of the answer, and sustained by the court. The appellant elected to stand by his answer, and final judgment was rendered for the appellee.

The ruling of the court upon the demurrers is assigned as error.

The first question presented for decision upon the demurrer to the first paragraph of the answer is, what title, if any, did Myron E. Cole acquire to the note sued on by the sale and

endorsement of the same to him by Henderson Cole, the payee? The endorsement is in these words: "Feb'y 23d, 1880. Pay M. E. Cole or order." Signed "Henderson Cole."

The note is payable to the order of Henderson Cole, at a bank within this State. The delivery of it to the First National Bank of Elkhart, without endorsement, as collateral security for $50 loaned by the bank to Henderson Cole, did not pass to the bank the legal title to the note. The title remained in Henderson Cole. *Farwell* v. *Tyler*, 5 Iowa, 535; *Allen* v. *Newberry*, 8 Iowa, 65; 2 Parsons Notes and Bills, p. 438. Though the bank had possession of, and was entitled to hold, the note as security for the payment of the $50, yet Henderson Cole was still the legal owner of the note, and could, subject to the rights of the bank, transfer, by endorsement, the legal title and his interest in the note to M. E. Cole or any one else. In doing this, he would do no wrong to the bank. Nor would the fact that M. E. Cole was the clerk of the bank incapacitate him from accepting by endorsement the title and interest of Henderson Cole in and to the note. The transfer of the note by Henderson Cole to M. E. Cole, coupled with the agreement on the part of the latter to pay the bank, amounted to a transfer of the note subject to the rights of the bank. There was nothing wrong or unusual in this. Henderson Cole had the right so to sell and transfer, and M. E. Cole had the right so to purchase the note; and the possession of the note for this purpose was not in violation of, but altogether consistent with, the rights of the bank.

It is alleged in the answer, that the note was taken from the bank, and that the assignment was made to M. E. Cole, without the knowledge or consent of the bank, but it is also averred that, as soon as made, the note, with the endorsement upon it, was returned to the vaults of the bank. This latter statement, in connection with the agreement of M. E. Cole to pay the $50 to the bank, frees the transaction from even a suspicion of fraud or unfairness. The note being thus in the vaults of the bank, with the endorsement to M. E. Cole upon it,

the officers of the bank, if chargeable with a knowledge of its affairs and the condition of its securities, must be presumed to have known of the transfer of the note to its clerk, and to have assented to it. The officers of a bank are affected with notice of its condition and transactions as well as of its rights and the action of its board of directors. Morse Banks, 115; *Lyman* v. *Bank of United States*, 12 How. 225; *Gillet* v. *Phillips*, 13 N. Y. 114. We think that, in view of the facts stated in this paragraph of the answer, it is fair to presume that the bank was informed of the agreement of M. E. Cole to pay to it the $50, and that it accepted or agreed to accept him as its debtor for the $50. It is not averred that M. E. Cole did not pay the bank said $50, as he had agreed, nor that the bank in any way objected to his disposition of the note in controversy. Had M. E. Cole taken the note from the possession of the bank without paying the $50, and sold and transferred it to the appellee without authority to do so, he would have been guilty of a gross violation of duty, if not a crime. It will not be presumed that he was thus guilty, but rather, that, in accordance with his promise and his duty, he paid the bank the $50. This presumption, in view of the whole transaction as set forth in the first paragraph of the answer, is eminently just. The payment of the money by M. E. Cole to the bank would have been alike in discharge of his agreement with Henderson Cole, and his duty to the bank, and quite in accordance with the nature of the transaction as indicated by the facts pleaded, and in support of the honesty and integrity of the conduct of the parties. It will not be assumed, in the absence of averment to the contrary, that he failed to pay the $50. " When," says Wharton, " a duty is undertaken, and time requisite for the performance of the duty has elapsed, and there is no proof of the non-performance," the performance may be presumed. And this presumption is not limited to public officers. Wharton Ev., sec. 1318.

The question was, under the circumstances, one between the bank and Myron E. Cole, in which Henderson Cole had,

so far as the note was concerned, no interest; his right to the note was gone.

We conclude that M. E. Cole became the holder of the note in suit in good faith, free from any right of set-off existing in favor of the appellant against Henderson Cole, and discharged from any equities existing between the original parties to the note.

It is averred in the answer, that, at the time the appellee purchased the note sued on, he had no actual notice of the injunction issued against Henderson Cole at the suit of the appellant, nor that said note had been pledged to the bank; that he paid for said note $600 in cash, and agreed to cancel notes which he held against M. E. Cole for $400; but that he did not at the time actually cancel said notes, or surrender them to said Cole; that on the same day the appellee was notified of the claim of the appellant; that afterwards the appellant tendered to the appellee $603.50, the amount paid in money for the note and the interest accrued thereon; that the appellee was, at the time he purchased the note, a director of the First National Bank of Elkhart.

We think, in view of the averment that the appellee was ignorant of the rights of the bank, the fact that he was one of its directors does not in any way affect the questions involved. The presumption that might otherwise result from his official relations to the bank, as to his knowledge of its securities and means, is not a conclusive presumption, and is entirely removed by the averment of his actual want of knowledge.

It is also insisted by the appellant, that as the appellee did not in fact cancel the debt due him from M. E. Cole, which he agreed to cancel, he can not be regarded as an innocent holder of the note, or that, in any event, he can not recover more than the appellant had tendered him.

The note was endorsed to the appellee in consideration of $600 paid, and an agreement by the appellee to cancel a debt of $400 due him from the endorser. The debt was not can-

celled, nor the evidence of it surrendered to the endorser, nor discharged, unless the agreement to cancel operated as an extinguishment of it. The authorities are not quite agreed as to whether the purchase of a note for a previously existing debt is such a consideration as protects the endorsee or holder of commercial paper so purchased as against existing equities. "It is now quite well settled," says Parsons, "that where negotiable paper is received in payment and extinguishment of a pre-existing debt, the holder is entitled to protection." In most of the cases it is held that there must be an *actual* discharge of the debt and a surrender of the evidence of it. *Williams* v. *Little*, 11 N. H. 66; *Townsley* v. *Sumrall*, 2 Pet. 170-182; *Youngs* v. *Lee*, 18 Barb. 187; *Farrington* v. *Frankfort Bank*, 24 Barb. 554.

In *Babcock* v. *Hawkins*, 23 Vt. 561, the court says: "The accord is sufficiently executed, when all is done, which the party agrees to accept in satisfaction of the pre-existing obligation. * * All that is requisite is, that the debtor should have executed the new contract to that point whence it was to operate as satisfaction of the pre-existing liability, in the present tense."

We are inclined to think that the endorsement and delivery of the note, pursuant to the agreement, operated as a present discharge and satisfaction of the debt agreed to be cancelled, and that the appellee is, for this reason, entitled to protection as an innocent holder of it. But, as we have concluded that his endorser, M. E. Cole, was a *bona fide* holder of the note, it is not necessary to decide this question, for the appellee must be deemed to hold the note free from all equities from which it was discharged in the hands of his endorser. *Thomas* v. *Ruddell*, 66 Ind. 326; *Hereth* v. *Merchants' Nat'l Bank*, 34 Ind. 380; *Smith* v. *Hiscock*, 14 Maine, 449.

We have assumed so far that the note sued on is commercial paper. If it is to be so regarded, the appellant admits that the second paragraph of the answer is bad. But he insists that the agreement contained in the note to pay attorney

fees takes from it the character of commercial paper. He cites *Woods* v. *North*, 84 Pa. St. 407, *First Nat'l Bank* v. *Gay*, 63 Mo. 33, and *Jones* v. *Radatz*, 27 Minn. 240, which fully support his views. But this court has held otherwise. *Stoneman* v. *Pyle*, 35 Ind. 103; *Maxwell* v. *Morehart*, 66 Ind. 301; *Pate* v. *First Nat'l Bank of Aurora*, 63 Ind. 254.

We think there was no error in sustaining the demurrers to the answer.

PER CURIAM.—It is ordered, on the foregoing opinion, that the judgment below be affirmed, at the costs of the appellant.

WOODS, J., was absent.

## ON PETITION FOR A REHEARING.

MORRIS, C.—The appellant asks a rehearing in this case, for the reasons that, as he contends, neither M. E. Cole nor the appellee was an innocent holder of the note sued on, and because the instrument sued on is not a note.

We are disposed to adhere to the views expressed in the opinion, that Cole and the appellee were both innocent holders of the note; that it must be presumed, upon the facts stated in the answer, that Cole paid the bank, as he had agreed, the amount due it before he transferred the note to the appellee; and that the bank, through its officers, knew that the note had been transferred to him, and acquiesced in his title to it.

The appellant contends, with much earnestness, that the court erred in holding the paper sued on to be a note. It is as follows:

"$1,000.          GOSHEN, IND., Jan. 31st, 1880.

"Sixty days after date I promise to pay to the order of Henderson Cole one thousand dollars, payable at the St. Joseph Valley Bank, Elkhart, Indiana, for value received, without any relief whatever from valuation or appraisement laws, with ten per cent. interest from after due, and attorney fees.                    WM. PROCTOR."

It is argued that the promise in this note is not to pay a certain and specified amount, but an uncertain sum, a promise to pay $1,000 and attorney fees; that the latter sum is clearly uncertain, and, when added to the $1,000, as it must be to express the whole sum promised, the whole becomes uncertain ; that the promise to pay attorney fees is a part of the instrument, and can not be separated from the promise to pay the preceding sum of $1,000 ; that the promise necessarily embraces both sums.  He also insists that fees may be earned before the notes become due ; that if, by a fraudulent attempt of the maker to leave the State without paying or making provisions to secure the note, it might become necessary to procure a writ of *ne exeat* to secure the final payment, and to employ an attorney, then, in such case, the fees of the attorney would be within the promise.  He distinguishes this from the case of *Stoneman* v. *Pyle*, 35 Ind. 103.  In the case in 35 Ind., the promise was to pay attorney fees if suit should be instituted upon the note, while in the case now before us there is no such express condition.

The argument of counsel, to say the least of it, is plausible. We think, however, that while the precise condition expressed in the note in the case of *Stoneman* v. *Pyle*, is not implied in the note sued upon, the condition is implied that only such services as may be rendered after maturity shall be charged in the case before us ; that the clear intention and understanding of the parties to the note were that the maker would pay such attorney fees as might be incurred by the holder of the note in its collection after it matured ; that any attorney fees that might be contracted by the holder of the note, in securing it before due, were not within the contemplation of the parties at the time the note was executed, and, therefore, not within the promise.  *Smock* v. *Ripley*, 62 Ind. 81 ; *Tuley* v. *McClung*, 67 Ind. 10.

In the case of *Stoneman* v. *Pyle*, 35 Ind. 103, it was held that a conditional stipulation to pay attorney fees, contained in a promissory note, did not destroy or affect its negotiability.

This case was decided eleven years ago, and has been followed by the cases of *Hubbard* v. *Harrison*, 38 Ind. 323, *Smock* v. *Ripley*, and *Tuley* v. *McClung*, *supra*. It has not been questioned in any subsequent case, but has been universally acquiesced in by the bar. It must be regarded as the law of this State.

Among others, counsel call our attention especially to the case of *Morgan* v. *Edwards*, 53 Wis. 599 (40 Am. R. 781). In this case, the court say: "A large number of cases have been cited which hold that if the amount payable at the maturity of the paper is fixed and certain—the instrument containing the other essentials of a note,—it is still a note, although it contains a further promise to pay an uncertain sum for expenses or costs of collection if not paid at maturity, or if suit be brought upon it."

True, the court holds that, where the promise is not made expressly conditional in the note, it is not to be held or construed as containing, by implication, such condition, but the promise is to be construed as absolute, binding the promisor to pay any fees or expense accruing in securing and collecting the note, whether incurred before, at or after the maturity of the note. We think that the construction of such a clause in a note, adopted by this court, is correct and in accordance with the intention of the parties to the instrument.

The petition for a rehearing is overruled. ·