Taft, Circuit Judge,
(after stating the facts.) This judgment must be reversed. We cannot agree that either of the grounds upon which the learned judge directed a verdict for the defendant was well taken.
• 1. The feature of the bill which in the opinion of the court below destroyed its negotiability was the stipulation to pay attorneys’ fees. It was said that this rendered the amount due uncertain, and that certainty in the amount due was an essential of negotiable paper.
The bill was drawn in Indiana and accepted in Michigan, to be discounted in Indiana, and to be paid in Michigan. In Tilden v. Blair, 21 Wall. 241, Pelton, a resident of Chicago, drew a draft payable in 60 days, and sent it to Tilden & Co., a firm resident in New York state, for their acceptance. They accepted it without consideration, and returned it to him for the purpose of enabling him to have it discounted in Chicago. The draft was made payable in New York city. The supreme court held that the draft was an Illinois contract, and that the liability of the acceptors to a honajide purchaser for value before maturity was to be determined by the law of Illinois, and not by that of New York. The case cited and the one at bar are on all fours, and the contract here must accordingly be held to be an Indiana contract, the liability^ on which is to be determined by Indiana law. Except so far as the rights of the parties are affected by statute the question is one of general commercial law, but it is the general commercial law of the state of Indiana. Upon such questions courts of the United States, in exercising a jurisdiction concurrent with that of the state courts, have always asserted an independence of judgment as to the state law, even if they differ with the state supreme court. But where the question is a new one with the federal courts it is their rule, as it is their duty, to give weight to the decisions of the courts of the state, whose law they are administering. Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. Rep. 10, and authorities cited on page 34, 107 U. S., and page 22, 2 Sup, Ct. Rep.
The contract of acceptance is, by the face of the bill, to “ pay * * * two thousand dollars, with interest at the rate of eight per cent, per annum after maturity, and attorneys’ fees, without any relief from valuation or appraisement laws. ” The stipulation as to interest expressly applies only in case the bill is not paid at maturity. The provision as to valuation and appraisement laws can, in view of the operation of such laws, have reference only to the execution of a judgment or attachment on suit brought, and is therefore also applicable only in case the bill is not paid at maturity. On the principle of noscitur a sociis it clearly follows that the agreement to pay attorneys’ fees could only become operative after the bill had been dishonored. Such would be the reasonable interpretation of the contract without the aid of the other stipulations, for it is not usual or necessary to employ attorneys to collect bills before they are due. In Proctor v. Baldwin, 82 Ind. 377, it was held by the *194 supreme court of Indiana that in a promissory note in which the maker agreed to pay an amount certain, “ with ten per cent, interest and attorneys’ fees,” the condition was implied that only such attorneys’ fees could he charged against the maker as were incurred after dishonor. That was a stronger case than this. In Maxwell v. Morehart, 66 Ind. 301, the words, “ with interest at ten per cent, per annum after maturity and attorneys’ fees, ” were similarly construed. See, also, Garver v. Pontious, Id. 191.
Lest it may be supposed to have escaped our attention, a statute of Indiana, which took effect March 10, 1875, (section 5518, Revised Statutes of Indiana, 1881,) should be noticed in this connection. It reads as follows:
“■Attorneys' Fees. Any and all agreements to pay attorneys’ fees upon any condition therein set forth, and made a part of any bill of exchange, acceptance, draft, promissory note, or other written evidence of indebtedness, are hereby declared illegal and void: provided, that nothing in this section shall be construed as applying to contracts made previous to the taking effect of this act.”
Our construction of the bill in suit is that the attorneys’ fees therein provided are payable only on condition of nonpayment of the bill at maturity, and this might seem to bring the stipulation within the inhibition of the section just quoted. That the section is not to be regarded as having such effect is authoritatively settled by the supreme court of the state in Churchman v. Martin, 54 Ind. 380, where it was held that astipulation to pay the amount of the note “ and five per cent, attorneys’ fees” was not void under the statute, although there was an implied condition that they should only be payable in case of dishonor, because the statute only forbade such stipulation when the condition was expressed in the instrument. As the condition is not expressed in the bill in suit, but is implied, the statute does not apply to it. '
The law of bills of exchange, established as it has been by ancient usage, is frequently arbitrary, and not deducible from logical considerations. Upon the point at issue here, however, the authorities are in such hopeless conflict that we are able to select that view which seems to us most consistent with the general character of such instruments. The indispensable qualities of a bill of exchange are that it shall be payable in a sum certain, at a time certain, to a person certain. It is intended to be a circulating medium until maturity. For this purpose •every purchaser must know exactly what will be or ought to be paid on fit at maturity. It only has currency on the hypothesis that it is to be ■paid at that time. If the sum then to be paid is fixed and certain, we •do not see why that is not sufficient. A stipulation as to what shall be ■done in case the bill is not paid does not affect its character as a financial medium before it is dishonored. As soon as the bill is dishonored, it loses its value as a negotiable instrument, for thereafter an indorsee gains no better title than his transferrer. It is unreasonable to hold that the negotiability of a bill is lost because of a provision having no effect while it remains negotiable.
*195 As already intimated, it is impossible to reconcile the authorities. For the reasons given we prefer to follow those courts which hold that the agreement to pay attorneys’ fees after maturity does not destroy the negotiability of a bill of exchange. We are the more inclined to do so because we are considering an Indiana contract, and this view has been established as the law of that state in a series of decisions, beginning with Stoneman v. Pyle, 35 Ind. 103. The other cases are Proctor v. Baldwin, 82 Ind. 377; Tuley v. McClung, 67 Ind. 10; Maxwell v. Morehart, 66 Ind. 301; Smock v. Ripley, 62 Ind. 81; Hubbard v. Harrison, 38 Ind. 323.
The court of appeals of Kentucky reached the same conclusion in Gaar v. Banking Co., 11 Bush, 186; the supreme court of Iowa in Sperry v. Horr, 32 Iowa, 185; the supreme court of Kansas in Seaton v. Scovill, 18 Kan. 434; and the supreme court of Illinois in Nickerson v. Sheldon, 33 Ill. 372, and in Houghton v. Morrison, 29 Ill. 244. Judge Pardee, of the fifth circuit, in Adams v. Addington, 16 Fed. Rep. 89, and Mr. Justice Brewer, while circuit judge, in Hughitt v. Johnson, 28 Fed. Rep. 865, expressed the same views. Other authorities to the same effect are Trader v. Chidester, 41 Ark. 242; Heard v. Bank, 8 Neb. 10; Dietrich v. Bayhi, 23 La. Ann. 767; Howenstein v. Barnes, 5 Dill. 482; Bank v. Fuqua, (Sup. Ct. Mont.) 28 Pac. Rep. 291. See, also, Towne v. Rice, 122 Mass. 67, and Arnold v. Railroad, 5 Duer, 207. The contrary decisions in Dakota, Minnesota, Wisconsin, Missouri, South Carolina, North Carolina, California, Pennsylvania, Maryland, and Michigan it would be useless to consider or to attempt to distinguish.
2. The remaining question is whether the Sutton Manufacturing Company can avoid their acceptance in the hands of a bona fide purchaser for value before maturity on the ground that it was ultra vires.
The evidence shows conclusively that Henry S. Hopper, the secretary and treasurer, had full and general authority to sign and issue business paper on behalf of the corporation. The only limitation of his authority was the same as that upon the corporation itself, namely, the extent of its charter powers.
Every- one dealing with a corporation is charged with notice of its corporate powers. If, therefore, a reference to the charter shows a seeming act of the corporation to be beyond its powers, it is void, and cannot be made the basis of any claim of liability against the corporation. But there are acts that may or may not be within the charter powers, their lawful character being dependent on the existence of a fact which cannot be known from the act itself. If the extrinsic fact upon which depends the lawful character of the act is one peculiarly within the knowledge of the general agent of the corporation by whom the act is done, the act itself is an implied representation that the necessary fact exists, the truth of which the corporation is estopped to deny against any person who in dealing with the corporation has parted with value on the faith of it. The principle has been frequently applied in cases of commercial paper issued in the name of the corporation by its officers having general authority to issue such paper.
*196 A leading ease is that of Stoney v. Insurance Co., 11 Paige, 635. Chancellor Walworth there decided that a negotiable security of a corporation which upon its face appeared to have been duly issued by the corporation, and in conformity with the provisions of its charter, is valid in the hands of a bona fide holder thereof without notice, although such security was in fact issued for a purpose and at a place hot authorized by the charter of the company, and in violation of the laws of the state where it was actually issued. See, also, to 'the same effect, Farmers’ & Mechanics’ Bank v. Butchers’ & Drovers’ Bank, 16 N. Y. 125; Bissell v. Railroad Cos., 22 N. Y. 289; Mechanics’ Banking Ass’n v. New York & S. White Lead Co., 35 N. Y. 505; Bank v. Young, (N. J. Err. & App.) 7 Atl. Rep. 488; Wright v. Line Co., 101 Pa. St. 204; Water Co. v. DeKay, 36 N. J. Eq. 548; Credit Co. v. Howe Mach. Co., 54 Conn. 357, 8 Atl. Rep. 472; Gelpcke v. City of Dubuque, 1 Wall. 203; Genesee County Sav. Bank v. Michigan Barge Co., 52 Mich. 438, 18 N. W. Rep. 206; Bird v. Daggett, 97 Mass. 494.
The learned judge below held that these authorities did not apply because of the general statutes of Michigan, above referred to, making it unlawful to divert , the operations or to appropriate the funds of a corporation to purposes not set forth in the articles of association.
In his view this statutory denunciation of ultra vires acts renders accommodation paper absolutely void. We cannot agree with him. The general terms of the statute indicate that it was in this respect merely declaratory of the common law. If the legislature of Michigan had intended to establish a rule of liability for corporations of that -state different from that applied to corporations everywhere else, it would have used more specific language, so that its purpose could not be misunderstood.
Negotiable instruments having their origin in a transaction forbidden by statute are not void in the hands of a bona fide holder for value without notice unless the statute expressly declares them to be void. Chit. Bills, 95; Story, Prom. Notes, § 192; Daniel, Neg. Inst. § 188; Norris v. Langley, 19 N. H. 423; Bank v. Thompson, 42 N. H. 369; Converse v. Foster, 32 Vt. 828, 831; Wyatt v. Buhner, 2 Esp. 538.
Here is not a specific avoiding of accommodation paper issued by corporations, and we think it would be going much too far to give such effect to the very general language under consideration.
In Bird v. Daggett, 97 Mass. 494, it was held that where an agent of a corporation, duly authorized to sign all notes and business paper, unlawfully gave accommodation paper in the name of the company, the company was liable to a bona fide holder for value before maturity. The general statute of Massachusetts, like the Michigan statute, provided that it should be unlawful for it to divert its operations or appropriate its funds to other purposes than those set forth in its articles of association. The. case is exactly like the one at bar.
The Michigan cases cited do not meet the point. In Beecher v. Dacey, 45 Mich. 98, 7 N. W. Rep. 689, the making of accommodation acceptances was said not to be within the powers of the corporation, but *197 there was in that case no question of the rights of a bona fide holder for value. The same is true of the cases of McLellan v. File Works, 56 Mich. 582, 28 N. W. Rep. 321, where the court held that the plaintiff had notice of facts from which he ought to have inferred the real character of the paper. The case of Merchants’ Nat. Bank v. Detroit Knitting & Corset Works, 68 Mich. 620, 36 N. W. Rep. 696, seems to be based wholly on McLellan v. File Works, and turned on the question of the general authority of the agent signing the acceptance. The statute and its effect are not considered at all.
' The judgment of the circuit court is reversed, with instructions to order a new trial.