LAKE CHARLES NATIONAL BANK ET AL. v. J. I. CAMPBELL COMPANY.

Decided November 3, 1909.

**Receivership—Ratable Distribution of Assets—Powers of Court.**

A corporation chartered and authorized to do business only in Texas acquired the plant and assets of a corporation authorized to do a similar business in Louisiana, and thereafter operated said plant as a separate concern and without change of its name; the Texas corporation was placed in the hands of a receiver; creditors who had dealt with the Louisiana corporation and become its creditors as such, had a receiver appointed by the Louisiana courts for the Louisiana plant, and the proceeds of the sale of that property was by order of said court applied as credits upon the claims of said creditors alone to the exclusion of the Texas creditors; afterwards the same creditors sought to intervene in the receivership proceedings in Texas for the balance due on their claims. Held, the Texas court rightly refused to permit them to intervene unless they should pay to the Texas receiver within a fixed time what had been received by them through the receivership in Louisiana. The Texas corporation was the equitable owner of the property in Louisiana as well as of that in Texas, and the very purpose and soul of a receivership is to secure an equal sharing of the assets of the insolvent, which said creditors were seeking to avoid.

Appeal from the District Court of Harris County. Tried below before Hon. W. P. Hamblen.

*McCoy, Moss & Knox* and *S. R. Perryman,* for appellants.

*Spotts & Matthews,* for appellee.

JAMES, CHIEF JUSTICE.—This suit arises upon the intervening of the Lake Charles National Bank, the Calcasieu National Bank and George W. Ford, as creditors of the J. I. Campbell Company for which the District Court of Harris County had appointed appellee Norris the receiver. The decree appealed from is one denying these interveners the right to participate in the funds of this receivership unless they should pay to the receiver, within a fixed time, what had been received by each of them through a receivership in Louisiana of the J. I. Campbell Company and the Lake Charles Lumber Com-

pany, an incorporated concern, and interveners declining to accede to this, their suits were dismissed.

The report of the master in reference to these claims was as follows. After finding the amounts of the respective claims of these parties, the report proceeds:

"It is admitted that each and all of these drafts were given for the purchase price of logs purchased by the Lake Charles Lumber Company, and were used by this company in operating its sawmill at Lake Charles, and the drafts are what are commonly known as 'log paper.' Each of the drafts was given for logs sold to the Lake Charles Lumber Company in Louisiana, and were accepted by the J. I. Campbell Company in Houston, Texas. I file herewith, as a part of this report, the testimony introduced before me as to the organization and ownership of the Lake Charles Lumber Company. Briefly stated, the facts are as follows:

"The J. I. Campbell Company was incorporated under the laws of the State of Texas, and copy of its charter is filed as a part of this report. Its power is limited by its charter to the operation of sawmills and planing mills, and the manufacture of lumber and articles made of lumber in certain counties in the State of Texas. It was not authorized to do business in the State of Louisiana, nor authorized to do business under any other name than that of the J. I. Campbell Company.

"The property of the Lake Charles Lumber Company was formerly owned by L. B. Menefee & Company, located at Lake Charles, Louisiana, and early in the year 1904 I. L. Campbell, who is the vice-president of the J. I. Campbell Company, leased the sawmill from Menefee & Co. at Lake Charles, and made an agreement with A. F. Sharp to pay him a salary of $250 a month to move to Lake Charles and take charge of the business as manager, and he was to have forty percent and the J. I. Campbell Lumber Company sixty percent of the profits of the Lake Charles Lumber Company. The J. I. Campbell Company furnished all the money to buy this mill, and I find from the evidence that all the property of the Lake Charles Lumber Company was the property of the J. I. Campbell Company, purchased with its money, and that the running of the business in Louisiana under the name of the Lake Charles Lumber Company was done for the purpose of bookkeeping; in other words, that the amount of business at that point might be separately kept, so that it could be easily ascertained whether that branch of the business was making or losing.

"I find from the evidence that all the drafts sued on by the said three interveners were acquired by them before maturity, but they all knew that the same were for purchase money of logs sold to the Lake Charles Lumber Company.

"Shortly after the institution of the receivership proceedings in this cause I. L. Campbell and Mrs. Sarah Campbell filed receivership proceedings in the Fifteenth Judicial District Court of Louisiana, in which the J. I. Campbell Company and the Lake Charles Lumber Company were made defendants, and in that cause S. C. Tevis was appointed receiver, and, after hearing, the case was appealed to the Supreme Court of that State, and I file as a part of this report the opin-

ion and judgment of the Supreme Court of the State of Louisiana, and also the judgment of distribution made in the Fifteenth District Court of Louisiana. It was held in that case that the Lake Charles Lumber Company was a separate and distinct legal entity from the J. I. Campbell Company, and that the creditors of the J. I. Campbell Company were not entitled to participate in the distribution of the assets in Louisiana, and the court ordered the same paid to the creditors of the Lake Charles Lumber Company for debts which had been created by and for the benefit of the Lake Charles Lumber Company, and excluded all other creditors of the J. I. Campbell Company to intervene in that cause. All the assets of the Lake Charles Lumber Company was paid for with the funds of the J. I. Campbell Company, and it was therefore the equitable owner of the assets of the Lake Charles Lumber Company. The interveners having each intervened in the Louisiana case, and received part of said assets, must account for the amount so received, and are only entitled to have their claims allowed herein for the amount thereof, less the amount they received from the receiver appointed in Louisiana. The proof before me is that each of the above-named interveners received 48.24 percent of their respective claims from the receiver in Louisiana, and this amount should be credited against their respective claims herein.

II. "Should it be held by the court that the Lake Charles Lumber Company was a separate organization, in which the J. I. Campbell Company was not interested, then, as its charter did not authorize it to do business in Louisiana or to accept or guarantee payment of the drafts of the Lake Charles Lumber Company, it would seem to me that the interveners were not entitled to recover against it at all, for, as found, the drafts sued on were all given for logs purchased by the Lake Charles Lumber Company, which interveners knew, and that payment was sought to be made by drafts on the J. I. Campbell Company, and it being a corporation with limited charter powers, they were on notice that it had no right to accept paper of another company.

"I find, however, that the Lake Charles Lumber Company was merely a name in which the J. I. Campbell Company was doing business, and that the drafts were given in their own business, and the interveners are entitled to judgment on the same, less the amount of 48.24 percent of each claim, which was paid to them by the receivership in Louisiana."

The judgment recites that the three interventions had been consolidated, and the court, having considered the pleadings, the master's report and the exceptions of the receiver thereto, together with the evidence, finds that at the time of the institution of this suit and of the appointment of the receiver herein the defendant J. I. Campbell Company, a corporation, was indebted to interveners as alleged by them (stating the respective debts), and that afterwards said interveners received from the assets of the said J. I. Campbell Company found in the State of Louisiana, 48.24 percent of the amount of their said claims (stating the amount received by each claimant), and thereupon found that interveners "were not entitled to participate in or receive any part of the funds now in or to come into the hands of said receiver, until they have paid to said receiver within ten days from this

date the said sums by them respectively received from and out of said assets found in the State of Louisiana as above stated," and when the above determination was announced and interveners declined to make such payments to the receiver, judgment was rendered against them as aforesaid.

The report of the master was not excepted to by interveners, and the matters of fact, as they appear therein, were sustained by the evidence.

The court in its decree overruled the first exception of the receiver to the master's report, and one of the facts determined by the court, for all purposes of this appeal, was that the J. I. Campbell Company was in reality the interested party in the business at Lake Charles, using the name of the Lake Charles Lumber Company, and the assets of or in the name of the last-named company were paid for by its funds, and that it was the equitable owner of all the property of the Lake Charles Lumber Company. The use of the name of the Lake Charles Lumber Company by the J. I. Campbell Company was doubtless to facilitate the prosecution of its business in Louisiana, its own charter conferring upon it power to do business only in certain named counties in Texas. As a matter of fact its assets consisted in part of this property in Louisiana, although the courts of that State, upon a judicial investigation of its status and the right of creditors of the J. I. Campbell Company to share therein, have held it to be property of and distributable only to creditors of the Lake Charles Lumber Company, because the J. I. Campbell Company had no legal existence in Louisiana and was not to be recognized there, and hence denied the J. I. Campbell Company's existence for any purpose in that State, and denied to the creditors of the J. I. Campbell Company any right of participation in the assets in that jurisdiction. The receiver of the J. I. Campbell Company, the appellee here, was not a party to that proceeding.

These interveners, holding the drafts drawn in the name of the Lake Charles Lumber Company, were by virtue of that fact admitted to share in the assets in Louisiana. The trial court, however, found the same to have been the property of the J. I. Campbell Company. Interveners realized from that source about one-half of their demands. The receivership in Louisiana was granted after the appointment of the receiver in Texas for the J. I. Campbell Company, and these interveners received in that proceeding payment of part of their claims from what the court below has determined was assets of the J. I. Campbell Company, and which in truth and in fact was the real debtor. They have, therefore, received a payment from assets belonging ratably to all creditors of the J. I. Campbell Company, a preference which the creditors, for whose benefit the receivership in this case exists, were excluded from in that distribution and have no way of obtaining; and the only way in which their just right to an equal or pro rata distribution of the corporation's assets may be enforced, in view of such preference, is through the court at whose door the interveners are knocking; and as the trial court had no jurisdiction over the property in the other State, it can not interfere with the disposition made by the courts of Louisiana of property there; but while it has no

such power and no power to compel these interveners to turn over to its receiver what of the assets they have secured in Louisiana, it can say to them: "Unless you are willing to come in on the same footing as other creditors and submit to the extent of your ability to an equal sharing of the assets among all creditors, which is the purpose and soul of this receivership, you will not be recognized in the distribution of property under its control." The court in this State has the undoubted right, as it is its duty, to distribute the assets under its control to all creditors who appear, pro rata. The question presented is: Can it deny admission to a claimant who has, since the receivership, received assets of the insolvent corporation the retention of which would, if he be admitted unconditionally, yield him more than an equal sharing of the assets. We think the court has the right to exclude him no matter where or how such part of the corporation's assets has been acquired since the receivership, if he is unwilling to do that which will have the effect of procuring that just equality for which the receivership exists. (Ward v. Connecticut Pipe Manufacturing Co., 41 Atl., 1057.)

One of appellants' contentions is that the J. I. Campbell Company was the primary debtor and the Lake Charles Lumber Company the secondary one, and that as it has made part of the debts out of the latter, it has a right to credit what is so received and be allowed as a creditor of the primary debtor in this receivership of the balance. This presupposes that the assets received by them belonged to the Lake Charles Lumber Company, which the findings below distinctively negative. Of course they could not possibly be admitted for more than the balance, in any event, and this is all they are asking. They would have this right if the J. I. Campbell Company were the defendant. But the case is obviously different where other creditors are the real defendants. They have come to a court of equity, and as creditors seeking to share with other creditors a fund, they must do what equity dictates under all the circumstances surrounding their coming. The credit, or rather the advantage, they have secured over the others, they may retain, but they can not do so and at the same time require the court to vouchsafe to them a preference, which the court would have done had it granted their applications.

So far as the findings and the evidence are concerned, the interveners appear as *bona fide* purchasers of the paper, and, as such, they could look to both the J. I. Campbell Company, the acceptor, and the Lake Charles Lumber Company, the drawer. But the question here is not concerned with their *bona fides*. Their right to resort to the J. I. Campbell Company and to this receivership is not questioned. It is simply a question of their being allowed to share in this receivership fund on terms of unfair inequality with other general creditors.

The appellee's independent propositions are overruled. The first of these is that assuming that, as claimed by appellants, the J. I. Campbell Company and the Lake Charles Lumber Company were separate legal entities, the acceptances sued on having (upon that theory) been made for the benefit and accommodation of the Lake Charles Lumber Company, the acts of acceptance were *ultra vires,* and not binding on

the J. I. Campbell Company. The assumption is not sustained by the facts.

The third is that appellants having intervened in the cause in the District Court of Louisiana, and having there opposed the allowance by that court of the claims of the various creditors of the J. I. Campbell Company who intervened in that cause, alleging that these were only entitled to participate in the proceeds of the property in Louisiana remaining after the payment of all debts of the Lake Charles Lumber Company, and having succeeded in such contentions, they are now estopped from claiming to be creditors of the J. I. Campbell Company.

The second is that the testimony shows that the organization known as the Lake Charles Lumber Company was formed for the purpose of enabling the J. I. Campbell Company to use its funds in prosecuting its business in Louisiana in violation of its charter, and the drafts sued on having been executed and accepted to aid in the accomplishment of such purpose, and the interveners being charged with notice of such fact, are not entitled to recover on said instruments.

There are no cross-assignments of error by appellees, and we doubt that they have the right to raise these questions. But if they present questions of a fundamental nature they are unsound. What interveners did and accomplished in the Louisiana proceeding was merely to exclude the creditors, whose claims were only against the J. I. Campbell Company, from participating in the particular assets under the control of that court. The adjudication had no reference to any right of the interveners to proceed against other assets in another jurisdiction for any unsatisfied balance of their claims. The Honorable Supreme Court of Louisiana in the opinion it delivered states that this subject was not involved, in this language: "What may be the rights of the creditors of the Lake Charles Company *quoad* any balance that may be due them after the property of the company has been exhausted, as against the J. I. Campbell Company (regarding the latter as an undisclosed principal) is a question that need not be here considered."

The proposition is that the acceptances of the J. I. Campbell Company were void in the hands of interveners because given in aid of an unauthorized exercise of its corporate or chartered powers, because the findings were in effect that all interveners knew when they bought the paper that the drafts were given for logs purchased by the Lake Charles Lumber Company, and this fact alone was sufficient to charge them with knowledge that the J. I. Campbell Company was without power to make the acceptances. Notwithstanding the latter company had no power to conduct its corporate business in Louisiana, it does not follow that it had no power to make these acceptances. Conditions might exist in the proper exercise of its corporate functions which made it obligatory upon it to accept and pay the Lake Charles Lumber Company's drafts, and this being so, these purchasers are not charged with notice of a want of power. (Bird v. Daggett, 97 Mass., 494; Stoney v. American Life Ins. Co., 11 Paige, 635; Farmers' Nat'l Bank v. Sutton Mfg. Co., 52 Fed., 191.) The judgment is affirmed.

*Affirmed.*