## CLARK v. TILLINGHAST.

(Circuit Court of Appeals, Seventh Circuit. October 8, 1912.)

No. 1,878.

BILLS AND NOTES (§ 97*)—PARTIAL FAILURE OF CONSIDERATION—SET-OFF.

A national bank owning an equity in certain real estate, a corporation was organized to take over the same, which executed bonds to the amount

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of $85,000 and delivered the same to the bank to represent such equity. The Comptroller of the Currency required that the investment be reduced by a sale of $40,000 of the bonds, whereupon the bank's cashier sold $6,000 par value to defendant for $5,000, taking his note, secured by the bonds, as collateral therefor. This was objected to as a makeshift by the bank examiner, who then insisted that the transaction be rescinded, that the bonds be restored to the assets of the bank, and that the directors guarantee payment of $20,000 of the sum represented by them. This was carried out, and defendant's note withdrawn from the bank's assets by the cashier and placed in his personal desk, but was never surrendered to defendant, and on failure of the bank it passed into the hands of plaintiff, its receiver, who brought suit thereon, after having sold the equity in the real estate represented by the bonds held by the bank, without notice to defendant, and without recognizing his interest therein. *Held* that, since it was not within the power of the Comptroller, his receiver, the directors, or all of them, to have deprived the bank of any advantage it had fairly obtained by a sale of the bonds, especially as it affected their own liability, the rescission was invalid, and that the most that defendant was entitled to in an action at law was a set-off of an amount equal to the value of his interest in the equity, on the theory of partial failure of consideration for the note.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 166–173, 175–181, 185–192, 196–198, 200, 202–205, 208–212, 1372–1376; Dec. Dig. § 97.*]

In Error to the Circuit Court of the United States for the Western District of Wisconsin.

Action by P. Tillinghast, as receiver of the First National Bank of Ironwood, Mich., against Charles R. Clark. Judgment for plaintiff, and defendant brings error. Affirmed.

Defendant in error, hereinafter termed plaintiff, filed his complaint against plaintiff in error, termed herein defendant, in said court on October 15, 1909, to recover, as such receiver, upon a certain note of defendant, dated October 31, 1908, for the sum of $5,000 and interest. From the record, it appears that the transactions were as follows, viz.:

Some time prior to June, 1908, said bank was the owner of an equity in certain Chicago real estate, upon which there was a prior incumbrance of $95,000; that this equity was valued at about $80,000, and stood in the names of Jahn and Larsen, respectively president and cashier of said bank; that in June, 1908, Jahn and Larsen organized a corporation under the laws of Michigan, known as the Commercial Investment Company, and caused all the stock, except two qualifying shares, to be issued to themselves; that said corporation thereupon executed bonds to the amount of $85,000, and delivered the same to the bank; that, while no declaration of trust was ever extended, all parties understood that the bonds represented the said equity, and the several transactions were so dealt with by all concerned that while the bank was holding said $85,000 bonds as a part of its assets, the same being held in lieu of said equity, the Comptroller requested that the investment be reduced by the sale of $40,000 of said bonds, whereupon Larsen, cashier, asked defendant, who was then a director of said bank, among others, to purchase $6,000 par value of said stock for the sum of $5,000; that Clark thereupon made such purchase, gave his note therefor to the bank, and put up the stock as collateral thereto; that thereafter the bank examiner objected to said arrangement, characterized it as a mere makeshift and demanded that the notes be returned to the makers, that the bonds be placed back among the assets, that the directors guarantee the payment of $20,000 of the sum represented by said bonds, and that Jahn and Larsen deposit certain personal securities to secure such agreement; that the directors then agreed to cancel the former arrangement, return the notes given on the sale of the bonds, return the bonds to the bank, and make said guaranty; that such action was taken that the note of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

defendant was withdrawn from the bank assets and placed by the said Larsen, cashier, in his personal desk, and defendant notified thereof. This all took place about June 13, 1909. It further appears that on June 21, 1909, the examiner, under instructions from the Comptroller, took possession of the bank and its assets, including the bonds in question, and caused said equity to be conveyed to him, and in some manner became possessed of defendant's said note. The defendant charges that he forced open said desk and took the note. This the receiver denies.

The receiver was appointed on June 25, 1909, and took over said assets; that in August, 1909, defendant advised the receiver of the facts regarding the release of his note and demanded the return of the same to him, which demand the receiver denied; that thereafter, without notice to defendant, the receiver proceeded to collect the rent from said equity, turned it over to the Comptroller, and sold said equity for about $26,000 net, including rentals, and turned the whole proceeds over to the Comptroller. All this was done without in any way taking defendant's rights into consideration. It further appears that, prior to the said sale of said equity, this suit was instituted. On the hearing, the trial court held that the note in suit was not accommodation paper, but was among the assets of the bank; that in view of the fact that the bonds constituted only an indirect lien on the equity, the value of which was uncertain, the attempted rescission of the transaction wherein the note was given was not fair to the bank; that by reason of Jahn's and Larsen's knowledge of the insolvency of the bank, and the manifest interest of defendant, those three persons were not qualified to act in voting such a rescission; that plaintiff, in selling the equity, destroyed the value of the bonds; that defendant, having taken the bonds and given his $5,000 note therefor, being the note in suit, was entitled to his pro rata share of the proceeds of the equity, and the income thereof, which the court fixed at the sum of $1,968; and that such sum might be set up in a proceeding at law as for a partial failure of consideration. The court thereupon entered judgment for $5,000 and accrued interest, less said sum of $1,968 and accrued interest, viz., the sum of $3,535.39, as of July 20, 1911, from which judgment this writ of error is taken.

The court filed a finding of facts substantially as above set out, except that he found that the examiner discovered—(1) the note in the open desk of the cashier unsurrendered to defendant, and took possession of it lawfully; (2) that the attempted rescission took place on a Sunday; (3) that at the time the receiver knew the said equity was the only property back of said bonds, and also knew defendant's relation to said bonds; (4) that defendant was chargeable with knowledge of the fact that the bank was insolvent at the time rescission of the sale of the bonds was agreed on.

The errors assigned are: That the court erred in finding that the receiver came properly by the note and was the owner of it; that the court erred in holding that Jahn and Larsen knew, and that the other directors were chargeable with knowledge, that the bank was insolvent, and in holding that defendant was disqualified to vote for rescission; that the court erred in holding that defendant's $6,000 bonds were worth less than his note, in fixing defendant's interest in said equity at $1,968, and in holding that the proposed release of defendant was unfair to the bank; and that the court erred in excluding certain evidence bearing upon the rescission, and in failing to pass upon all the material issues raised.

Edward M. Smart, of Milwaukee, Wis., and H. L. Butler, of Madison, Wis., for plaintiff in error.

T. W. Spence and Irving A. Fish, both of Milwaukee, Wis., for defendant in error.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). It does not appear that the Comptroller directed the $20,000 guaranty to be given in lieu of, or as a substitute for, the notes taken on sale of the $40,000 bonds, nor does it appear that the $20,000 guaranteed was

realized on. Manifestly, it would not have been fair or legal to require defendant to take back his note, surrender his bonds, and join the other directors in guaranteeing the payment of $20,000, and at the same time withhold surrender of his note. It appears that the other purchasers of stock received their notes when they surrendered their stock—at least such is the inference from the record—and that defendant could have had his, at any time after the rescission and prior to the advent of the examiner, by applying for it. It must be remembered, however, that it was not within the power of the Comptroller, or his receiver, or the directors, or all of them, to have deprived the bank of any advantage it had fairly obtained by the sale of the $40,-000 of bonds, especially as it affected their own liability. Thompson on Corporations (2d Ed.) 1225 et seq., 6199 et seq., and cases cited; Drury v. Cross, 7 Wall. 302, 19 L. Ed. 40; Hays v. Citizens' Bank, 51 Kan. 535, 33 Pac. 318; Taylor v. Mitchell, 80 Minn. 492, 83 N. W. 418; Haywood v. Lincoln Lumber Co., 64 Wis. 647, 26 N. W. 184; Asheville Lbr. Co. v. Hyde (C. C.) 172 Fed. 730, and cases there cited.

The advantage belonged to the creditors, for whom they were to that extent trustees. Just why the examiner should deem the bonds a weak asset, and at the same time take the directors' guaranty of $20,-000 in preference to the individual obligations of the directors to the amount of $40,000, is not made plain by the record. There is a seeming inequality of justice in pursuing this defendant, just because he alone was tardy in taking up his note. That question, however, is not presented by the record, and need not be further considered.

It is clear from the record, however, that the examiner, the Comptroller, and the receiver were advised of the facts: (1) That the bonds represented the equity in the Chicago block, and should be dealt with as though they constituted the equity; (2) that defendant was the owner of $6,000 thereof, subject to the lien of his $5,000 note held by the bank; (3) that the equity was of an uncertain value, and of such a nature as not to be quickly realized on without sacrifice; and (4) that defendant's interest, entitled him to notice of and participation in any proceedings involving the annihilation of his $6,000 bond investment. The Circuit Court took this view of the matter, and attempted to remedy plaintiff's disregard of defendant's rights in that respect by crediting the latter with his pro rata share of the proceeds of the sale of the equity, on the theory of part failure of consideration. Whether he succeeded in making a fair adjustment must remain a mere matter of conjecture, so far as appears in the record. Defendant was equitably entitled to have his $6,000 of bonds, or $6/85 of the equity, dealt with separately, or at least to an ascertainment that a sale of the whole equity would result in an advantage to him. Instead of making any attempt to protect defendant's interests, the receiver sold the collateral as though it were an independent asset, taking the benefits of the attempted rescission and disavowing the rescission.

The Circuit Court held that there was in this case a partial failure of consideration, and upon that theory allowed defendant his pro

rata share of the equity as above stated. With this holding, under the facts of the case, we do not dissent, although there may be some question whether defendant may in such a proceeding set up want or failure of consideration. The examiner required the sale of the bonds for the purpose of enabling the bank to pass an examination. In such a case it has been said that the consideration for the note was, among other things, the deposits made upon the credit obtained or favor granted by reason of the extension, if any deposits were made. Skordal v. Stanton, 89 Minn. 511, 95 N. W. 449; Atwater v. Smith, 73 Minn. 507, 76 N. W. 253; Pauly v. O'Brien (C. C.) 69 Fed. 460; New England Fire Ins. Co. v. Haynes, 71 Vt. 306, 45 Atl. 221, 76 Am. St. Rep. 771 (1899); State Bank v. Kirk, 216 Pa. 452, 65 Atl. 932; Best v. Thiel, 79 N. Y. 15; Tillinghast v. Carr (C. C.) 82 Fed. 298; Murphy v. Gumaer, 18 Colo. App. 183, 70 Pac. 800; Merchants' Bank v. Rudolf, 5 Neb. 527; Proctor v. Baldwin, 82 Ind. 370; Bigelow on Estoppel (5th Ed.) 611; Morris on Banks and Banking, § 137.

We are not impressed with the injection of the fact that the rescission was agreed upon on a Sunday. If this defense should avail, it is a fact that action and consequent ratification was had on a secular day. In our view of the case, that question is not material. While we are of the opinion that the action of the receiver in handling and selling the stock was irregular, and for all that appears unfair to defendant, we are not disposed to hold that defendant has not received all the consideration he is entitled to in a proceeding at law.

The judgment of the Circuit Court is affirmed.