MERCHANTS' NATIONAL BANK OF CHICAGO V. DETROIT
KNITTING AND CORSET WORKS.

*Corporations—Authority of manager to accept drafts—Ultra
vires—Evidence.*

1. A corporate note given for an *individual* obligation is not given
in the usual course of business, and is presumptively *ultra vires*.
Special authority would be required, and persons taking such
note must ascertain at their peril that such authority has been
conferred. *McLellan v. Detroit File Works*, 56 Mich. 582.
2. The fact that the manager of a corporation was accustomed to
make and discount its notes to raise money to meet its expenses
has no tendency to prove his authority to accept *accommodation*
drafts drawn upon it by another corporation in which the drawee
had no interest; nor can it be held liable on such acceptances by
reason of the entry upon its books, by the direction of said man-
ager, of an account of such acceptances, without the direction
or knowledge of its officers.

Error to Wayne. (Chambers, J.)   Argued January 19,
1888.   Decided March 2, 1888.

Assumpsit.   Plaintiff brings error.   Affirmed.   The facts
are stated in the opinion.

*George W. Bates,* for appellant.

*Corliss, Andrus & Leete,* for defendant.

LONG, J.   Plaintiff brought this action in the circuit
court for Wayne county to recover against the defendant, a
corporation, upon two accepted drafts—one for $1,500, and
the other for $1,317.09—drawn by the Osgood & Wolfinger
Manufacturing Company, of Chicago, and indorsed across
the face: " Accepted.   Detroit Knitting & Corset Works, S.
Olin Johnson, Man."

The drafts were protested for non-payment.   To plaint-

iff's action in assumpsit defendant pleaded the general issue, with affidavit attached, denying the signature of defendant corporation on the drafts, and also that they were not accepted or executed by defendant, or by any person authorized to accept them for it.

The only question involved in the case is whether S. Olin Johnson had authority to accept the drafts for the defendant corporation.

The Osgood & Wolfinger Manufacturing Company discounted these acceptances with Schaffner & Co., of Chicago, a firm of brokers, who afterwards discounted them with plaintiff.

The defendant is a manufacturing corporation, organized under the laws of this State, and stocked for $100,000, all of which was paid in. The stockholders were Homer Pennock, who held one share; J. E. Guilbault, one share; Franklin S. North, one share; David Pennock, one share; and S. Olin Johnson, who held 3,396 shares as trustee for Mrs. Pennock and her two sons, though he did not hold any shares personally, and had no other interest in the concern except as an employé. These parties constituted the board of directors· Homer Pennock was president; North, vice-president; and Johnson, secretary and treasurer.

The articles of incorporation did not define the powers of the board, nor provide for any officers.

To establish Johnson's authority to accept these drafts, plaintiff called him as a witness, and he testified that he was engaged as manager, under a written contract with defendant, during the year 1885, but the contract did not define his powers or duties; that he had supervision of the business, but did not have exclusive management; that he never had any written or express authority to make or sign paper for defendant; and that these drafts were given to the Osgood & Wolfinger Manufacturing Company purely for its accommo-

dation; and that he was a stockholder and interested in the Osgood & Wolfinger Manufacturing Company at that time. These drafts were entered upon the books of defendant corporation by the book-keeper, under his (Johnson's) direction. When he accepted the $1,500 draft in suit, he relied upon a telegram from one Keena, a stockholder in the Osgood & Wolfinger Manufacturing Company with himself, guarantying to protect him if he would accept it; and he received a telegram from Mr. Pennock, president of defendant company, not to accept it, before he had accepted it.

Upon cross-examination of the witness, he testified as follows:

" Q. They were for no indebtedness of the defendant corporation to this Osgood Manufacturing Co., who drew these drafts?

"A. No, sir.

" Q. Were they not purely accommodation drafts for this concern at Chicago?

"A. Yes, sir; purely.

" Q. And the arrangement was that they got this draft, and were to pay it themselves, or provide for it?

"A. Yes, sir.

" Q. And they did provide for the payment, from time to time, as they came due, by sending the money to enable you to pay them?

"A. Yes, sir.

" Q. And they did so until they struck these last ones, which have been sued upon?

"A. Yes, sir.

"Q. I will ask you if, as a matter of fact, these eight or ten drafts were not virtually renewals of each other, largely?

"A. I think all except the first one.

" Q. So they continued to have you accept other drafts as renewals?

"A. Yes, sir.

"Q. Until they finally failed? The defendant corporation did not pay any of them? That is what I mean by that.

"A. This statement shows that. * * * I told the book-keeper to keep a memorandum of them when they came due, so that we could look out for them."

This memorandum is produced, and is as follows:

*Osgood & Wolfinger Mfg. Co. and Detroit K. and C. Works.*

| | | | | | |
|---|---|---|---|---|---|
| May 8. | Acceptance, 10 days | $1,600 00 | May 21. | Cash | $1,600 00 |
| " 21. | " 2 months | $1,050 00 | July 24. " | | $850 00 |
| June 5. | " 60 days | 1,037 73 | Aug. 6. " | | 500 00 |
| | | | Sept. 12. " | | 500 00 |
| | Balance | $237 73 | | Balance | 237 73 |
| July 23. | Acceptance, 90 days | 1,061 73 | Oct. 24. | Cash | $354 66 |
| | | | " 24. " | | 707 17 |
| | Balance | $237 63 | | Balance | 237 63 |
| July 29. | Acceptance, 60 days | 1 037 73 | Sept. 30. | Cash | $237 73 |
| Nov. 27. | " 90 days | 1,307 09 | " 30. | Bills receivable | 800 00 |
| Dec. 2. | Cash | 800 00 | Dec. 2. | Bills | 800 00 |
| " 9, | Acceptance, 2 months | 1,500 00 | | | |
| | | $4,882 45 | | | $1,837 37 |

It does not appear that the attention of the board of directors was ever called to this memorandum, or that they were ever consulted in regard to it, or ever knew that Johnson had accepted drafts in the name of the defendant corporation for the Osgood & Wolfinger Manufacturing Company; but, on the contrary, the directors being called as witnesses, each denies any knowledge of the transaction, and denies the authority of Johnson to accept accommodation drafts in the name of the company.

It does appear, however, that Johnson was accustomed, whenever defendant corporation was in need of funds to meet its expenses, to make notes at the People's Savings Bank at Detroit for such moneys. It is claimed by the plaintiff that this is some evidence of his authority to accept the drafts in suit. This fact could have no such bearing. These drafts were not made or accepted in the interest of, or for the benefit of, defendant corporation. They were purely for the accommodation of the Osgood & Wolfinger Manufacturing Company; and the fact that Johnson was permitted by defendant to draw money from the People's Savings Bank for the use and benefit of defendant, on notes made by him, would give him no authority to accept drafts for the accommodation of the Osgood & Wolfinger Manufacturing Company, or any other person.

A corporation note, given for an individual obligation, is not given in the regular course of business, but is presump_ tively *ultra vires*. Special authority would be required, and those persons who should venture to take such notes must at their peril ascertain that the special authority has been conferred. *McLellan v. Detroit File Works,* 56 Mich. 582 (23 N. W. Rep. 321).

It is also claimed that the defendant is to be held liable for the reason that its account with the Osgood & Wolfinger Manufacturing Company was carried on the books of the company. It appears, however, that this was done under the direction of Johnson, and it nowhere appears that it was done under the direction of the officers of the corporation, or with their knowledge.

We have carefully examined the record, which is voluminous, to find some evidence of authority in Johnson to accept these drafts, and bind defendant corporation, but the record contains no such evidence.

At the close of the trial, the court directed a verdict for defendant. Judgment being entered thereon, the plaintiff brings error.

We find no error in the record, and the judgment of the court below must be affirmed, with costs.

The other Justices concurred.