CHARLES R. WHEELER, Assignee,

*v.*

THE HOME SAVINGS AND STATE BANK.

*Opinion filed October 19, 1900—Rehearing denied December 6, 1900.*

1. CORPORATIONS—*commercial corporation has no power to pledge property for accommodation.* A commercial corporation has no power to pledge its property for the payment of an individual debt of another party in which it has no interest and for which it is in nowise responsible, and such action being *ultra vires* and void is incapable of ratification.

2. SAME—*acquiescence in unauthorized acts of officers does not create estoppel.* Acquiescence by a corporation in unauthorized acts of its officers in a matter outside of its corporate powers cannot give rise to an estoppel.

3. SAME—*when officer's representations cannot be treated as made by corporation.* Representations made by an officer of a corporation in his own interest and against the interest of the company cannot be treated by the party to whom they are made as being the representations of the corporation.

4. SAME—*party accepting corporate property as pledge for officer's debt acts at his peril.* A bank which knowingly receives property of a corporation as pledge for the individual debt of an officer of the corporation acts at its peril, and cannot hold the property as against the corporation or its assignee, particularly where it appears the act was never authorized by the corporation.

*Wheeler v. Home Savings and State Bank,* 85 Ill. App. 28, reversed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Peoria county; the Hon. T. M. SHAW, Judge, presiding.

WINSLOW EVANS, for appellant.

DAN F. RAUM, and N. ULRICH, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellant, as assignee for the benefit of creditors of Singer & Wheeler, a corporation organized under the laws of this State to engage in and carry on a wholesale

drug business, brought his action of replevin in the Peoria circuit court against appellee to recover certain warehouse receipts for two hundred and twenty barrels of whisky which had been issued to said Singer & Wheeler, and also to recover the whisky.   The property not having been obtained on the writ, a recovery was had for its value under a count in trover.   On appeal the Appellate Court reversed the judgment, and on another trial the court, a jury having been waived, found the defendant, who is the appellee here, not guilty, and entered judgment accordingly.   This judgment having been affirmed, the plaintiff on this his further appeal seeks a reversal for certain alleged errors.

It appears that the corporation, Singer & Wheeler, was in April, 1893, indebted to appellee, the bank, for $5000 borrowed money, and to secure the same pledged warehouse receipts issued to and owned by it for two hundred and seventy-five barrels of whisky.   In September, 1893, all of this debt was paid but $1000.   Before the latter date Peter J. Singer, who was a director and the treasurer and general manager of Singer & Wheeler, owed appellee on his own account $10,000 for borrowed money. The two notes, of $5000 each, which he had given for this money were overdue and the officers of the bank were pressing for payment.   Singer wanted more time, and told the agents of the bank that the corporation, Singer & Wheeler, owed him more than the amount of his debt, and that if it could pay him he could pay the bank, but that its financial condition was such it could not then do so.   The agents of the bank suggested to him that if the corporation owed him he should take from it whisky or other of its merchandise for the debt and pledge it to the bank for his own debt.   Singer replied that he could not do that, but after further conversation stated that he would see about it.   Soon thereafter he came to the bank and stated that he had made an arrangement and would pledge the whisky as security for his debt, and there-

upon took up his two notes of $5000 each and gave the bank his note for $10,000, due in ninety days, with an agreement showing that he had, in addition to certain shares of stock which he owned, pledged warehouse receipts for two hundred and seventy-five barrels of whisky.  At this time these receipts were held by the bank, as before stated, as security for $1000 which remained unpaid of the company's note of $5000.  They were the property of the company and had not been assigned by it but stood in its name.  A few days later the company paid this balance of its note, but its officer or agent making the payment did not take up the warehouse receipts.  Some time thereafter it was observed by an officer of the bank that the receipts had not been endorsed or assigned by the company, and he took them to its office and stated to the secretary, who was a son of Peter J. Singer, the manager, that the bank had held them as security for the company's note until it was paid but now held them as security for the note of Peter J. Singer, and that they ought to be endorsed.  The secretary thereupon endorsed them in blank in the name of the company, by himself as secretary, and re-delivered them to the officer of the bank.  He testified on the trial that he endorsed them in order that the bank might hold them as security for his father's note.  On two occasions afterward it became necessary to pay government taxes and storage charges, and the bank, at the request of the company, advanced the money,—first $2956.90, then $2933.70.  The secretary also at one time took up one of the receipts for five barrels of whisky and gave the bank another of the same amount for a different kind.  In June the next year, 1894, Singer renewed his note for $10,000, making it payable one day after date and with a like pledge of stock and receipts, and on the same day the company gave its own note to the bank for $5956.48 for the moneys advanced for taxes, etc., containing an agreement pledging as security the same warehouse receipts to the extent of

one hundred and fifty barrels of whisky. Afterward, from sales of a part of the whisky, authorized by the company, about $9000 was realized, from which the company's note to the bank given for taxes, etc., was paid, and upwards of $3000 applied by the bank on the individual note of Singer. The balance now due on his note exceeds the value of what is left of the whisky. These transactions took place while both the company and Peter J. Singer were apparently solvent, and they were not at any time questioned by the company. The truth was, however, that instead of the company owing Peter J. Singer, as he represented to the bank, he was indebted to the company during all of the time mentioned more than $30,000, and the company never set over, delivered or transferred to him in any way, either as payment of or security for any supposed indebtedness to him, any of said warehouse receipts. It is agreed, however, that the bank had no knowledge of the falsity of his statement that the company owed him more than he owed the bank. Nor does it appear that the company, or any of its officers or agents except Peter J. Singer, had any knowledge of his representations to the bank, or that the bank had taken the receipts relying upon such representations.

Upon substantially this state of facts it was held by the circuit and Appellate Courts that the company, and appellant, its assignee, are estopped from asserting title to said warehouse receipts and whisky as against the bank, and from calling in question the action of its officers in pledging them to secure the individual debt of one of them, viz., Peter J. Singer. This question of estoppel is the only one in the case, and was raised by propositions of law held or refused.

It is not claimed that the company was in any way responsible for or interested in the debt of its general manager, Peter J. Singer, to the bank, or that the pledging of its property to secure this debt was for its benefit or for any corporate purpose. Such a corporation has no

corporate power to become the mere surety of another or to pledge its property for the payment of the debt of another in which it has no interest or for which it is in no wise responsible and for mere accommodation.  Its charter is the measure of its powers, and all power not expressed or fairly to be implied is denied to it.  The power to lend its credit to another or pledge its property to secure the debt of another in a matter in which it has no interest or is not for its benefit, cannot, as a general rule, be implied.  7 Am. & Eng. Ency. of Law, (2d ed.) 788.

It is clear that the bank knew that these warehouse receipts were the property of the company.  They had been issued to the company, stood in its name until endorsed by the secretary, had been received by the bank from the company as security for its debt, and again accepted in pledge for its debt after they were pledged for Singer's debt,—its debt created for moneys advanced to it by the bank to pay taxes on the same whisky.  Indeed, there is no evidence that Singer, himself, ever had possession of the receipts, and it is not claimed that the bank believed, or had any sufficient reason to believe, that the receipts were the property of Singer, but only that Singer, from his own representations, had made some arrangement (the nature of which was not inquired into by the bank nor is it anywhere shown by the record) by which, because of the company's alleged indebtedness to him, he had obtained the right to pledge the receipts as security for his own debt.  True, the secretary of the company afterward endorsed its name on the receipts and returned them to the bank with the understanding that they were held as security for the debt of his father; but the secretary himself had no power to make the pledge, and the bank is chargeable with knowledge of such lack of power.  While no action of the directors making or authorizing the pledge was taken, still, treating it as the act of the corporation, it was *ultra vires* and void and incapable of ratification.  (*National Home Build-*

*ing Ass.* v. *Home Savings Bank,* 181 Ill. 35.) No fruits of the transaction were received by the company, and its mere acquiescence in the unauthorized acts of its officers in a matter outside of its corporate powers cannot give rise to an estoppel. If it be said that the company might be estopped from denying that it was indebted to Singer, and from denying that it had turned over the receipts to him to secure its alleged debt to him, thus apparently clothing him with a property interest in the receipts which he could pledge to the bank, it is sufficient to say that there was no such debt, and there was no evidence of any such debt on which the bank was authorized to rely as against the company. The company never knew of Singer's representations of the existence of such a debt, and is not, therefore, estopped from denying its existence. Singer was dealing with the bank in his own interest, and not as the officer or agent of the company. The bank could not, therefore, treat his representations so made in his own interest and against the interest of the company as the representations of the company. (*Moores* v. *Citizens' Bank,* 111 U. S. 164.) As said by the court of appeals of New York: "The general rule is, that one who receives from an officer of a corporation the notes or securities of such corporation, in payment of or as security for a personal debt of such officer, does so at his own peril. *Prima facie,* the act is unlawful, and, unless actually authorized, the purchaser will be deemed to have taken them with notice of the rights of the corporation." *Wilson* v. *M. E. R. Co.* 120 N. Y. 145.

In so far as the rulings of the circuit court upon propositions of law held and refused are in conflict with the principles above stated they are erroneous. The judgments of the Appellate and circuit courts must therefore be reversed and the cause remanded to the circuit court for further proceedings.          *Reversed and remanded.*