[No. 10014. Department One. February 23, 1912.]

## WILLIAM WHITFIELD, *Appellant*, v. NONPARIEL CONSOLIDATED COPPER COMPANY, *Respondent*.[1]

CORPORATIONS—CAPITAL STOCK—TRANSFER—RECORDING—NECESSITY —WRONGFULLY ISSUED STOCK—RIGHTS OF INNOCENT PURCHASERS. Under Rem. & Bal. Code, § 3693, providing that no transfer of corporate stock shall be valid except between the parties thereto until the same shall have been entered on the books of the company, a certificate for stock fair on its face, but wrongfully and fraudulently issued by officers of the corporation, is not valid or binding on the corporation in the hands of an innocent purchaser until it has been entered on the books of the company, the statute being for the protection of the company and the transfer of the stock being ineffectual until registered (GOSE, J., dissenting).

CORPORATIONS — CAPITAL STOCK — WRONGFUL ISSUANCE—LIABILITY OF COMPANY—OFFICERS—PERSONAL DEALINGS. Where the president of a corporation, in order to secure his personal debt, turned over a certificate for corporate stock that he had wrongfully and fraudulently issued, the assignee has no claim against the corporation as an innocent holder, either to compel the transfer of the stock on the books of the company or for its value; the company not being liable for acts of its officers in dealing with stock for their personal benefit.

CORPORATIONS—CAPITAL STOCK—ACTIONS—CANCELLATION OF STOCK —PARTIES—INNOCENT HOLDERS. Under Rem. & Bal. Code, § 3693, making registration on the books of the company essential to a valid transfer of corporate stock except as between the parties, a purchaser of stock who allows several months to lapse before asserting any right to have the stock transferred is bound by a judgment, rendered in an action promptly brought by the corporation against the record owners of the stock, cancelling the same as fraudulently issued.

Appeal from a judgment of the superior court for Snohomish county, Bell, J., entered September 29, 1911, upon an agreed statement of facts, dismissing an action to obtain title to corporate stock. Affirmed.

*Padgett & Bell*, for appellant.

*J. A. Coleman*, for respondent.

[1]Reported in 123 Pac. 1078.

CHADWICK, J.—This action was brought, praying for a decree asserting that plaintiff is the owner of certain shares in the defendant company. Upon the trial, it developed that the stock claimed by him was overissued, and he asks damages to the extent of its value. From the agreed statement of facts, it appears that, on August 17, 1907, one Nicholas Rudebeck was president of the defendant company, and for the purpose of continuing himself in such office, wrongfully, and contrary to certain outstanding contracts and resolutions of the company, issued certificates for a large number of shares of the treasury stock, including a certificate to one R. H. Ramsey for 10,000 shares, of the par value of $10,000. Ramsey's name was entered upon the books of the company as the owner of the certificate. After the stock had been issued, Rudebeck, who was owing plaintiff a certain sum of money, evidenced by a promissory note, to which was attached as collateral security a certificate for a certain number of shares in another company, went to plaintiff and made arrangements with him to turn over a certificate for 10,000 shares of the stock in the defendant company, in consideration of the surrender of his note and the collateral. He then procured the stock certificate that had been formally, as well as fraudulently, issued to Ramsey, which he caused.Ramsey to indorse in blank, and this he turned over to plaintiff on August 21, 1907. Thereafter, the machinations of Rudebeck becoming known to those interested in the corporation, a suit was begun by R. S. McCreery, the principal stockholder, and the holder of a contract made by the company in which it was agreed that no further stock should be issued excepting under certain conditions, for the cancellation of the shares wrongfully issued by Rudebeck. Rudebeck and Ramsey, who appeared as owners of the stock upon the books of the company, were made parties to the suit. Neither McCreery nor the company had any notice or knowledge of the claims of the plaintiff or his alleged ownership. The court entered a decree,

directing that stock so issued by Rudebeck, including the Ramsey certificate, be canceled. Some few months thereafter, plaintiff presented his certificate and asked that it be transferred on the books of the company. This was several times refused, and he brought this action September 26, 1908. The only other fact that is material to a decision in this case is that it is provided on the face of the certificate that it is "transferable only on the books of the corporation or by the holder hereof, in person or by attorney, upon the surrender of this certificate properly indorsed." The court below entered a judgment that plaintiff take nothing, and that the certificate held by him be canceled.

It was contended in the court below, and is here:

"That the rule of law established by the decisions of the courts, and by the application of just principles is, that one who is the holder in good faith and for value of a certificate of stock, regular in form and issued and signed by the officers of a corporation who are authorized to sign and issue stock of such corporation by its by-laws, is entitled to be recognized as a stockholder and to have issued to him in his name the number of shares called for by the certificate upon surrender of the same and compliance with the by-laws of the corporation regulating the surrender and transfer of its capital stock; or, when the circumstances are such that such relief cannot be had, as in this case, then to be indemnified by way of damages, although the certificate of stock held by such person was fraudulently issued by the officers of the corporation. Stated in another form, the rule appellant contends for is that when a certificate of stock of a corporation has been issued in regular form by the proper officers of the corporation acting fraudulently, but within the apparent scope of their official powers, the corporation is estopped to assert that the stock is void as against a holder of such certificate who has acquired the same for value and without notice, that the same was issued and put into circulation by a course of conduct on the part of the officers of the corporation that was fraudulent as to the latter."

But it does not follow that a recovery can be had under the facts before us, when considered in the light of our stat-

ute governing transfers of stock. Shares of stock are but symbols of property. They may be assigned, but are not negotiable instruments. Such certificates are nonnegotiable, in the sense that a complete transfer of title, good as against the corporation, can only be made when the transfer is made in accordance with a governing statute. The general rule is that a stock certificate, fair on its face and issued by the officers thereof, is a continuing affirmation by the corporation of title and interest in the shareholder, and although wrongfully or fraudulently issued are, when in the hands of an innocent purchaser for value, valid and binding upon the company. 10 Cyc. 590. This rule had been long established when the legislature of this state passed the following statute:

"The stock of the company shall be deemed personal estate, and shall be transferable in such manner as shall be prescribed by the by-laws of the company; but no transfer shall be valid except between the parties thereto, until the same shall have been entered upon the books of the company, so as to show the names of the parties, by and to whom transferred, the numbers and designation of the shares, and the date of the transfer." Rem. & Bal. Code, § 3693.

Therefore, we must hold that the statute was passed not only to avoid the effect of fraudulent assignments, but to relieve the corporation of the hardship of the rule just stated, as well as to protect it from liability from fraudulently issued stock. If this is not so, no purpose was served by its passage.

The case of *Davis v. Ball*, 64 Wash. 292, 116 Pac. 833, does not militate against our conclusion here. In that case no question was raised as to the transfer of the stock upon the books of the corporation. In fact, it was inferable from the record that the transfers of stock were actually made by a surrender of the original certificates and a reissue to the various holders.

The statute was considered in *Lacaff v. Dutch Miller Min. etc. Co.*, 31 Wash. 566, 72 Pac. 112. The court there said:

"This statute was, no doubt, intended to relieve a corporation from any liability whatever on account of the transfer of any of its shares of stock until it had had notice of the transfer, and had entered the same upon the books of the company. It, in effect, declares that all transfers of stock of the corporation are invalid, as between the company and the transferee, until such transfer shall have been entered upon the books of the company. If the transfer is invalid as between such transferee and the company, the transferee certainly cannot enforce such transfer against the company. Until the transfer is entered upon the books of the company there is no privity of contract existing between the transferee and the corporation which can be enforced by one against the other."

It is certainly within the power of the legislature to provide a time when the transfer of corporate shares shall become effective as against the company issuing them, and the statute by its plain implication, if not by its terms, has saved the right of the corporation to question the character of stock offered for transfer or registration. The *Lacaff* case has been followed in the recent case of *Gamble v. Dawson*, *ante* p. 72, 120 Pac. 1060, so that the rule seems to be settled, in this state at least, that a corporation unless estopped is not bound by a transfer of stock issued in fraud of its rights. The case of *Port Townsend Nat. Bank v. Port Townsend Gas & Fuel Co.*, 6 Wash. 597, 34 Pac. 155, is not in conflict with our present ruling. In that case the questions involved were wholly between the stockholder, his pledgee, and his creditor. The rights and interests of the company were not involved. The statute here construed was passed for the benefit and protection of the corporation and its creditors (*Van Horn v. New Western Shingle Co.*, 54 Wash. 117, 103 Pac. 42), and it conclusively appearing that respondent has not waived the benefit of the statute, it is entitled to its protection.

The agreed statement of facts raises another issue of law which must be decided in favor of the respondent. Admitting the legal position assumed by appellant, we think the

facts clearly show that appellant dealt with Rudebeck not as an agent of the corporation, but personally. The object of their negotiations was not for the purchase or sale of the stock directly or indirectly, but the payment or conservation of a personal debt. The ground upon which companies are held under appellant's contention is that of actionable negligence. In the case of *Knox v. Eden Musee American Co.*, 148 N. Y. 441, 42 N. E. 988, 51 Am. St. 700, 710, 31 L. R. A. 779, the court quoted, as a perspicuous statement of the principle, the words of Blackburn, J., in *Swan v. N. B. Australian Co.*, 2 Hurl. & C. 181:

"The neglect must be in the transaction itself, and be the proximate cause of leading the party into the mistake; and also, as I think, that it must be the neglect of some duty that is owing to the person led into that belief, or, what comes to the same thing, to the general public, of whom the person is one, and not merely neglect of what would be prudent in respect to the party himself, or even of some duty owing to third persons, with whom those seeking to set up the estoppel are not privy."

In *Manhattan Life Ins. Co. v. Forty-Second St. etc. R. Co.*, 139 N. Y. 146, 34 N. E. 776; *Id.*, 19 N. Y. Supp. 90, the president of a domestic corporation forged a certificate for one hundred shares of the face value of $10,000, and pledged it as collateral security for a personal loan. In a suit to recover, although it was held that the party forging the stock was not the president of the company in 1881, the date imposed on the certificate, the court recognized the general principle, saying:

"But, without determining what are the duties of the officers of a corporation, when called upon to respond to the inquiries of intending purchasers of the stock, there is a sufficient reason why the plaintiff cannot avail himself of the representations of Allen in regard to the genuineness of this certificate. They were made in a private and personal transaction, undertaken for his individual benefit, and so understood by the plaintiff. The plaintiff knew that Allen, in the negotiation of the loan, was not acting as the officer or

agent of the defendant, or in its behalf, and that his personal interest in the transaction might lead him to betray his principal. It is an old doctrine, from which there has never been any departure, that an agent cannot bind his principal, even in matters touching his agency, where he is known to be acting for himself, or to have an adverse interest. . . . The plaintiff in such a case assumes the risk of the agent's disloyalty to his trust, and has no occasion for surprise when he discovers that the agent has served himself more faithfully than his principal."

In *Moores v. Citizens' Nat. Bank*, 111 U. S. 156, A. loaned money to B. for his own use, and as security for its repayment and on his false representation that he owned and had transferred to A. a certificate of stock to an equal amount in a national bank of which B. was cashier, received from him such certificate written by him on one of the printed forms which the president had signed and left with him to be used if needed in the president's absence, and certifying that A. was the owner of that amount of stock "transferable only on the books of the bank on the surrender of this certificate." B. did not surrender any certificate to the bank, or make any transfer to A. upon its books, never repaid the money loaned, and was insolvent. The bank never ratified or received any benefit from the transaction. It was contended, there as here, that "the defendant is estopped to deny, as against a *bona fide* purchaser for value, the validity of such a certificate, if it was not an overissue; and if it was an overissue, the defendant is responsible for the loss sustained by such a *bona fide* purchaser for value." After reviewing the authorities, it was held that, "there is no precedent for holding that the plaintiff, having dealt with the cashier individually, lent money to him for his private use, and received from him a certificate in her own name, which stated that shares were transferable only on the books of the bank and on surrender of the former certificates, and no certificates having been surrendered by him or by her, and there being no evidence of the bank having ratified or received any benefit from the trans-

action, can recover from the bank for the value of the certificate delivered to her by its cashier." See, also, *Wright's Appeal*, 99 Pa. St. 425.

Reference to these authorities will show that it is well settled that one who deals with an apparent agent with reference to his private affairs cannot hold a company to an estoppel, but must look to one who has wronged him; for his debt is not thereby discharged, but continues. We take it from the judgment of the court that he also held that plaintiff was bound by the judgment in the McCreery suit; and on principle it should be so. Those interested in the company acted promptly when the fraud of Rudebeck was discovered. They brought suit against all those who appeared to be the owners of the stock. It is one of the objects of the statute providing for transfer of stock on the books of the company that it may know its own shareholders; and if a suit is begun and the apparent shareholder be made a party, the suit should be binding upon all claiming an interest in the shares, where they have—as plaintiff in this case did—allowed several months to lapse before asserting any right to have the stock transferred.

The rule is old and well established that, where a party brings an action against the record owner of property, and there be no evidence of possession in any one other than as shown by the record, the holder of an outstanding deed or other muniment of title is bound by the judgment. The judgment of the lower court is affirmed.

DUNBAR, C. J., PARKER, and CROW, JJ., concur.

GOSE, J. (dissenting)—I do not think the statute was intended to shield this corporation against the fraud of its officers. For this reason and on the authority of *Davies v. Ball*, 64 Wash. 292, 116 Pac. 833, I dissent from the view expressed by the majority.