[No. 10657.   Department One.   December 12, 1912.]

RUFUS P. MOONEY, *Respondent*, v. MOONEY COMPANY,
*Appellant.*[1]

EVIDENCE—PAROL EVIDENCE TO VARY WRITING.   Upon a sale of a
stock of goods to a corporation, pursuant to a written offer and an
acceptance in writing, by the specific terms of which the vendee
was to pay for the goods by issuing its capital stock for $33,000, it
is inadmissible to show by oral evidence that the vendee assumed an
indebtedness of the vendor on a note given for money loaned and
used in the business.

FRAUDULENT CONVEYANCES—SALES IN BULK—VERIFIED STATEMENT
OF CREDITORS—BURDEN OF PROOF.   In an action against a buyer of
a stock of goods in bulk, to recover upon an express contract to
assume a promissory note of the vendor, the plaintiff need not prove
affirmatively compliance with the sales in bulk law requiring a veri-
fied statement of the names and addresses of the creditors of the
vendor; and there is no presumption that the law was not complied
with.

CORPORATIONS—REPRESENTATIONS—OFFICERS ADVERSELY INTERESTED
—ULTRA VIRES ACTS—ESTOPPEL.   A corporation is not estopped to
question the legality of a transaction whereby one of its officers
gave the note of the corporation in renewal of his personal note,
as the transaction was presumptively *ultra vires*, and one dealing
with such officer is presumed to know that he cannot bind the com-
pany in matters in which he is adversely interested; especially
where the company derived no benefit from the transaction.

[1]Reported in 128 Pac. 225.

SAME—ACTS OF OFFICERS—RATIFICATION—REQUISITES. In such case, there can be no ratification by the corporation through acts of the officer implicated, where a trustee whose authority was a necessary prerequisite had no notice of the acts.

Appeal from a judgment of the superior court for King county, John S. Jurey, Esq., judge *pro tempore*, entered April 19, 1912, upon findings in favor of the plaintiff, in an action on contract, after a trial to the court. Reversed.

*Roney & Loveless*, for appellant.

*Henry S. Noon*, for respondent.

Gose, J.—This is a suit upon two promissory notes. The defendant has appealed from an adverse judgment. The facts are these: Prior to the 5th day of February, 1908, one O. P. Mooney owned and personally conducted a stationery store, in the city of Seattle. On the 30th day of September, 1907, he hired from the respondent, a brother, the sum of $2,000, and gave him his interest-bearing note therefor, payable six months after date. The money was deposited in the bank to the credit of O. P. Mooney, and used generally in the business. On the date first mentioned, O. P. Mooney, his wife, Katy A. Mooney, and William A. Wood, organized the appellant corporation. On the same day, O. P. Mooney made the following offer to appellant:

"O. P. Mooney offers to sell to O. P. Mooney Company the good will and stock and business and all sums of money due him for $33,000, and to take paid-up capital stock for that amount, and he directs that 166 shares be issued to himself, 162 shares to be issued to Kate A. Mooney, and two shares to Wm. A. Wood.                    O. P. Mooney."

Its acceptance was as follows.

"Whereas O. P. Mooney offers to sell to O. P. Mooney Company the good will and stock and business and all sums of money due him for $33,000, and take paid-up capital stock for that amount, Now, therefore, be it resolved that the O. P. Mooney Company accepts said offer of O. P. Mooney, and the president and secretary are directed to issue

to O. P. Mooney 166 shares, 162 shares to be issued to Katy A. Mooney, and two shares issued to William A. Wood in full payment of the respective subscriptions to the capital stock.                        Wm. A. Wood, Secretary."

O. P. Mooney then made the transfer in harmony with the offer and acceptance. Thereupon the appellant issued its capital stock as agreed upon. The business was thereafter carried on by the appellant. The three stockholders were elected trustees, and the trustees elected O. P. Mooney as president and manager, Katy A. Mooney as vice president, and William A. Wood as secretary. O. P. Mooney and Katy A. Mooney continued to hold their respective offices in the corporation until the 26th day of November, 1910, when they resigned and were succeeded by new trustees and officers. William A. Wood continued as secretary and bookkeeper until November 1, 1908, when he was succeeded by Frederick W. Hill, who served in that capacity until the 26th day of November, 1910, when he resigned and a successor was elected. Hill acted in the double capacity of bookkeeper and general manager from the first day of March, 1911, until the 27th day of August, following, when the appellant's assets appear to have been sold to a third party.

On the 29th day of March, 1908, O. P. Mooney gave his personal note to the respondent, payable in sixty days, for the $2,000 which he had hired, and the first note was surrendered. Between that date and July 11, the appellant paid to the respondent $400 on the last named note; and on that date gave him three notes, two of which were for $500 each, due in three and six months respectively, and the third was for $600 due in nine months, and the respondent surrendered the second Mooney note. The appellant's notes were signed, "O. P. Mooney Co., by O. P. Mooney, President." There was no consideration for these notes other than the surrender of the Mooney note. The appellant paid the $500 note first maturing. All of the appellant's books showed the appellant

as the maker of these notes and the amount of each thereof. The notes were thereafter shown as a liability against appellant in all of its financial statements to the bank with which it did business, and to the commercial agencies. Interest payments were made from time to time by the appellant, acting through its president and secretary. The last payment was made by Manager Hill, April 11, 1911, after the election of the new officers. There is no evidence that the new trustees knew of the payment at the time it was made, or that Katy A. Mooney knew of the notes until a short time before the commencement of the suit. Manager Hill says that he sent to the new trustees three statements of the resources and liabilities of the appellant. The first one bears date January 14, 1911, and shows "Bills payable, R. P. Mooney, $1,100." The other two statements bear date respectively March 1, 1911, and May 1, 1911. The former shows bills payable $1,100, and the latter shows the same item, $1,182.87, without disclosing the name of the creditor. O. P. Mooney had the entire management of appellant's business from the date of its incorporation until he resigned in November, 1910. He and Katy A. Mooney separated on February 5, 1908, and were divorced on April 13 following. O. P. Mooney filed a voluntary petition in bankruptcy in September, 1910, and deceased before the trial of this action.

The court found: (1) that the appellant assumed the indebtedness of O. P. Mooney; (2) that the notes were given "with the sufferance and acquiescence" of Katy A. Mooney; (3) that the sale by O. P. Mooney to the appellant was a sale in bulk, and that the statutory affidavit was "neither asked nor demanded;" and (4) that the appellant is estopped to dispute the validity of the notes. In pursuance of these findings, a judgment was entered against the appellant for the full amount of the principal of the two notes, the unpaid interest, attorney's fees and costs.

The first finding, i. e., that the appellant assumed the indebtedness of O. P. Mooney, is contrary to the plain terms of the offer and acceptance. The entire transaction was in writing. Mooney offered to sell the good will, stock, and business, and all sums of money due him, for $33,000, and to take as a consideration paid up capital stock for that amount, and directed the issuance of 166 shares to himself, 162 shares to Katy A; Mooney, and two shares to William A. Wood. The offer was accepted, the property was conveyed, and the stock was issued as directed. This closed the transaction. The offer and acceptance constituted the contract, and they are plain, detailed, and specific, and no extrinsic aid is needed to interpret them. Parol evidence to establish the assumption of Mooney's indebtedness was therefore inadmissible.

We may say, however, in passing, that the parol evidence was not sufficient to prove the assumption of the indebtedness. Mrs. Mooney says that the subject was not discussed. In this she is supported by the admitted fact that Mooney once personally renewed the note after the appellant took over the property. It is true that Wood said that the appellant paid some of Mooney's indebtedness, the amount not being stated. But it is also true that Mooney owed more than $12,000 which it did not pay.

It is admitted that the trustee Wood knew of the execution of the notes and the payment of the interest. The evidence, however, does not show that the notes were given "with the sufferance and acquiescence" of Katy A. Mooney, the other trustee and stockholder, as found by the court. Her testimony is that she was ignorant of the transaction until after the last payment of interest had been made, and there is nothing in the record rising to the dignity of evidence to prove the contrary.

The record is silent on the third finding, i. e., that a verified statement of the names and addresses of the creditors of Mooney was not given. The finding must have been based

·upon the legal presumption that it devolved upon the appellant to prove affirmatively that the statute was complied with. No such duty rested upon it, for two reasons: (1) The action is not grounded on fraud or the failure of the appellant to require the statutory affidavit, but it is grounded upon an alleged express contract for the payment of money to the respondent; and (2) there is no legal presumption that the requirements of the statute were not fulfilled. 16 Cyc. 1082; *Sheffield v. Balmer*, 52 Mo. 474, 14 Am. Rep. 430.

There remains for discussion the contention that respondent chiefly relies upon, that the appellant is estopped by its conduct to question the legality of the transaction. The facts have been stated and need not be repeated. The respondent will be presumed to know that an officer in a corporation, however extensive his apparent authority may be, may not bind his principal in a matter in which he is adversely interested. Mooney could not at the same time act for himself and for his principal, without the full knowledge and free consent of the principal. *O'Conner Min. etc. Co. v. Coosa Furnace Co.*, 95 Ala. 614, 10 South. 290, 36 Am. St. 251; *Gallery v. National Ex. Bank*, 41 Mich. 169, 2 N. W. 193, 32 Am. Rep. 149. An officer who receives the note or other obligation of a corporation in payment of the personal debt of the officer with whom he deals does so at his peril. The reason is that such a transaction is not in the regular course, but is presumptively *ultra vires*. *Merchants' Nat. Bank v. Detroit Knitting etc. Works*, 68 Mich. 620, 36 N. W. 696; *Wilson v. Metropolitan Elev. R. Co.*, 120 N. Y. 145, 24 N. E. 384, 17 Am. St. 625; *Farrington v. South Boston R. Co.*, 150 Mass. 406, 23 N. E. 109, 15 Am. St. 222, 5 L. R. A. 849; *Porter v. Winona & D. Grain Co.*, 78 Minn. 210, 80 N. W. 965; *Pelton v. Spider Sawmill & Lumber Co.*, 132 Wis. 219, 112 N. W. 29, 122 Am. St. 963; *West St. Louis Sav. Bank v. Shawnee County Bank*, 95 U. S. 557.

In the *Wilson* case, Judge Parker, who wrote the opinion of the court, said:

"Undoubtedly the general rule is that one who receives from an officer of a corporation the notes or securities of such corporation, in payment of, or as security for, a personal debt of such officer, does so at his own peril. *Prima facie* the act is unlawful, and, unless actually authorized, the purchaser will be deemed to have taken them with notice of the rights of the corporation. (*Garrard v. P. & C. R. R. Co.*, 29 Penn. St. 154; *Pendleton v. Fay*, 2 Paige, 202; *Shaw v. Spencer*, 100 Mass. 388.)"

In the *Farrington* case, the rule is thus stated:

"An agent cannot properly act for his principal and himself when their interests are adverse, and any person dealing with an agent in a matter affecting his principal, and knowing that the interests of the agent are adverse to those of his principal, ought to be held to the duty of ascertaining that the acts of the agent are authorized by his principal."

The basis of all estoppel is that the party invoking the doctrine has acquired rights in innocent reliance upon acts of the other. Without one innocent party and one negligent party there can be no occasion for the application of the doctrine. *Germania Safety-Vault & Trust Co. v. Boynton*, 71 Fed. 797; *Wheeler v. Home Sav. & State Bank*, 188 Ill. 34, 58 N. E. 598, 80 Am. St. 161; *Whitfield v. Nonpariel Consol. Copper Co.*, 67 Wash. 286, 123 Pac. 1078; 11 Am. & Eng. Ency. Law (2d ed.), 439.

In the *Boynton* case, the court, speaking through Judge Lurton, said:

"The corporation had no power to lend its credit to Herman and Pank. Its obligations entered into for that purpose would be void in the hands of one who took them with notice. The consent of the stockholders would not strengthen the case. A defect in the power of the corporation is not supplied by the agreement of the corporators."

The rule is thus tersely stated in the *Wheeler* case:

"No fruits of the transaction were received by the company, and its mere acquiescence in the unauthorized acts of

its officers in a matter outside of its corporate powers cannot give rise to an estoppel."

In the *Whitfield* case, the president of the defendant corporation was indebted to the plaintiff and had pledged certain collateral as security for the debt. The plaintiff thereafter exchanged the collateral for a fraudulent certificate of stock, purporting to have been regularly issued by his debtor as president of the corporation, to a third party who had indorsed it in blank. This was sought to be made the basis of an estoppel against the defendant, the principal of the offending officer. In meeting that situation the court said:

"Reference to these authorities will show that it is well settled that one who deals with an apparent agent with reference to his private affairs cannot hold a company to an estoppel, but must look to one who has wronged him; for his debt is not thereby discharged, but continues."

*McLellan v. Detroit File Works*, 56 Mich. 579, 23 N. W. 321, is an instructive case involving facts substantially identical with the facts at bar. The opinion was written by Judge Cooley. There two persons, while carrying on a partnership business, gave the plaintiff two firm notes. Later the partners formed a corporation, taking all the shares of stock except two, and the partnership assets were transferred to the corporation in consideration of the stock issued to the partners. One of the partners who was made president of the corporation assumed to renew the notes three or four times as notes of the corporation, making small payments at each renewal with checks or other paper of the corporation. The avails of the original notes were transferred with the other partnership assets to the corporation. But the evidence showed that the other stockholders were not aware that the president was giving corporate obligations in place of the obligations of the firm. It was held, that the plaintiffs were deemed to have accepted renewals of the notes with knowledge of all the facts; that

they were deemed to have known that an officer of a corporation could have no general authority to give the notes of a corporation to take up the outstanding obligation of its members, and that persons taking such notes from him must at their peril ascertain that the special authority had been conferred. In commenting upon the significance of the transfer of the assets of the partnership to the corporation, the court said:

"The fact that the assets of the partnership went to the corporation has no significance in this controversy. The partners were paid for their interest in the assets with stock of the corporation, and the creditors of the partnership lost nothing by it, for the partners continued liable to them, as before, and with, presumptively, as much property as before. That Hayes used checks of the corporation to pay firm debts has, if possible, still less significance. . . . . The fact that nearly all the shares in the corporation were issued to Rowe & Hayes is mentioned in the argument as tending to the proof of an understanding that the corporation would assume partnership debts. But it was an immaterial fact. The corporation when formed, was not identical with the partnership of Rowe & Hayes, and could not be sued for their debts even if there were no other stockholders."

See, also, *Durlacher v. Frazer*, 8 Wyo. 58, 55 Pac. 306, 80 Am. St. 918.

There is a suggestion in the brief of the respondent that the appellant ratified the unlawful acts of its president. This position is not sound. The appellant never acted on the matter at all. Corporations are managed through boards of trustees. One of the trustees was not aware of the existence of the notes until after the last interest payment had been made. The president and secretary were powerless to ratify their own wrongful acts. The same authority is required to ratify a contract as to make it in the first instance. *Porter v. Winona & D. Grain Co.*, *supra*; *Lyndon Mill Co. v. Lyndon Literary & Biblical Inst.*, 63 Vt. 581, 22 Atl. 575, 25 Am. St. 783.

The respondent's authorities go no further than to hold that, where a corporation has received a benefit through a transaction of its managing officer in the regular course of business with an innocent party, the corporation will be held estopped to claim that the officer exceeded his authority. This rule does not aid the respondent. The appellant received no benefit from the transaction and the respondent was not innocent.

The judgment is reversed, with directions to enter a judgment for the appellant.

MOUNT, C. J., CROW, CHADWICK, and PARKER, JJ., concur.