[No. 13052.  Department Two.  April 1, 1916.]

BALFOUR, GUTHRIE & COMPANY, *Respondent*, v. BRESLAUER,
RAMSEY & COMPANY, INCORPORATED, *Appellant*,
A. BRESLAUER, *Defendant*.[1]

CORPORATIONS—CONTRACTS—ACTIONS—EVIDENCE—SUFFICIENCY.  A
promise by a newly formed corporation to pay the outstanding debts
of a business purchased of one of the promoters, pursuant to a res-
olution reciting that such promoter "had offered to sell" the business
for $3,000, is sufficiently established by the preliminary agreement
to incorporate so providing, signed by the promoters, who became
officers and directors and holders of all the capital stock of the
new corporation; since the resolution referred to the previous agree-
ment, and was an acceptance of the proposition therein contained.

Appeal from a judgment of the superior court for King
county, Humphries, J., entered May 17, 1915, upon findings
in favor of the plaintiff, in an action on contract, tried to the ·
court.  Affirmed.

*Chas. E. Allen* and *Robert A. Devers*, for appellant.

*Kerr & McCord*, for respondent.

PARKER, J.—The plaintiff, Balfour Guthrie & Company,
a copartnership, seeks recovery from the defendants, A. Bres-
lauer and Breslauer, Ramsey & Company, Incorporated, of
the purchase price of four invoices of salt, claimed to have
been sold by the plaintiff to the defendant Breslauer and
agreed to be paid for by the defendant Breslauer, Ramsey &
Company, Incorporated, upon that company's becoming the
purchaser of the brokerage business of A. Breslauer.  Trial
before the superior court without a jury resulted in findings
and judgment against both defendants for the full amount
claimed, from which the defendant Breslauer, Ramsey & Com-
pany, Incorporated, has appealed.  The defendant Bres-
lauer has not appealed.

[1]Reported in 156 Pac. 398.

For several years prior to the sale of his business to Bres-
lauer, Ramsey & Company, Incorporated, upon the incorpo-
ration of that company, A. Breslauer was engaged in the
merchandise brokerage business in Seattle, dealing in salt
and other commodities.   He purchased of respondent four
separate invoices of salt as follows:   On March 2, 1914,
$25.50; on March 7, 1914, $156.60; on March 11, 1914,
$406.74; and on March 30, 1914, $160.   On March 24, 1914,
S. V. Ramsey was introduced to Breslauer by W. P. Sprague,
and immediately negotiations commenced between these three
looking to the organization of a corporation for the purpose
of purchasing and continuing the business of Breslauer in
Seattle.   On that day, or possibly the next, they arrived at
an agreement which was then roughly reduced to writing in
pencil, as follows:

"Agreed to incorporate for $10,000.   Adolph Breslauer
to sell his present business to the new concern for $3,000.
Samuel V. Ramsey $3,000 cash to equal.   Outstanding bills
against A. Breslauer business, Central building, to be paid
by the new corporation, but charged against A. Breslauer
personally at 5%.   Breslauer, Ramsey & Co., Inc., 100
shares of $100 each.   Mr. Sprague two shares.   49 shares
each.   Principal place of [business], Seattle, Wash.   Adolph
Breslauer, President and General Manager, Samuel V. Ram-
sey, Vice-president and Treasurer, Wendell P. Sprague, Sec-
retary.                                      S. V. R.
                                            "A. B."

Ramsey and Breslauer signed their initials to this writing
to evidence their assent thereto.   Sprague did not sign the
writing in any manner, but he was present at the time and
fully assented thereto.   On the back of this paper there ap-
pears these words, evidently written by Sprague:

"All old bills to be paid by Mr. Ramsey, Mr. Breslauer
will give Mr. Ramsey his personal note for 5% int."

These words are not signed in any manner.   The oral evi-
dence is in serious conflict as to these words being any part
of the agreement and as to their being written upon the back

of the paper at the time.  On March 31, 1914, articles of incorporation having been executed, were filed in the proper public offices, completing the incorporating of Breslauer, Ramsey & Company, Incorporated.  On the same day, in compliance with the preliminary agreement above quoted, Breslauer subscribed for forty-nine shares of the capital stock, and paid $3,000 thereon by transferring his business to the corporation; Ramsey subscribed for forty-nine shares of the capital stock and paid $3,000 thereon in cash, and Sprague subscribed for two shares of the capital stock.  On the same day, the first meeting of the trustees was held; Breslauer, Ramsey and Sprague being the trustees and the only officers of the corporation as well as the owners of all its capital stock.  Breslauer's business was then transferred to the corporation, in pursuance of a resolution of the trustees adopted at that meeting and spread upon their minutes as follows:

"Whereas, A. Breslauer has offered to sell to Breslauer, Ramsey & Company, Incorporated, all and every part of his going import and export brokerage and merchandise business and the good will thereof, with a consideration of a credit of $3,000 to be applied toward the purchase of forty-nine shares of capital stock of Breslauer, Ramsey & Company, Incorporated, at the par value of $100 per share; and,

"Whereas, it appears to the stockholders that said proposition is necessary for the business of this company and that the same is of the value of $3,000;

"Resolved, that the board of trustees of this company be and they hereby are authorized in their discretion to accept that offer and purchase the property above mentioned for the said price and to issue said number of shares of stock in payment therefor."

There is no written evidence of Breslauer's proposition which is referred to in this resolution except the above quoted preliminary agreement entered into between the three incorporators who became the trustees of the corporation and the owners of all its stock in pursuance of that agreement.  The

salt purchased on March 2d, 7th and 11th, was delivered by the respondent before the transfer of Breslauer's business to the corporation. The salt purchased on March 30th was evidently delivered by respondent after the transfer of Breslauer's business to the corporation. In any event, the corporation admits its obligation to pay for this last purchase of salt, evidently upon the theory that it was not delivered until after the corporation had taken over the business. Tender of the $160 due upon this purchase was made by the corporation and deposited in court shortly after the commencement of this action.

A large amount of oral evidence was introduced touching the question of the corporation agreeing to pay the indebtedness of Breslauer, incurred in his business, upon its transfer to the corporation. Much of this evidence is in serious conflict, though it may be said that the evidence shows with a fair degree of certainty that the corporation, by its acts and payments made after its organization, did assume and pay a considerable portion of the indebtedness of Breslauer incurred in his business prior to its transfer to the corporation. The denial by the corporation of its agreement to pay Breslauer's indebtedness seems to be directed to this particular indebtedness only. The trial court found that:

"The said corporation assumed and agreed to pay the merchandise indebtedness of said Breslauer, including all sums due the plaintiffs."

This is the theory upon which the judgment was rendered against the corporation and upon which respondent's counsel sought to recover. No attempt was made to comply with the sales-in-bulk law, nor is that law invoked in respondent's behalf.

This controversy, in its last analysis, presents only a question of fact; that is, Did Breslauer, Ramsey & Company, Incorporated, assume and agree to pay Breslauer's indebtedness, including the purchase price of the invoices of salt of March 2d, 7th and 11th? We are constrained to agree with

the trial court in its conclusion upon this question.  It is true that the preliminary agreement between Breslauer, Ramsey and Sprague, looking to the organization of the corporation and the taking over of Breslauer's business and prescribing the conditions upon which each was to become a stockholder and the manner of paying for the stock, was made before the existence of the corporation; but it must be remembered that no one other than these three persons had anything to do with the organization of the corporation, nor did any one else become in any manner interested in the corporation, either as officer or stockholder.  This, we think, is sufficient to warrant the conclusion that the proposition of Breslauer to transfer his business to the corporation, referred to in the resolution of its trustees, was the proposition contained in the preliminary agreement made between these three, looking to the organization of the corporation and the transfer of Breslauer's business to it.  That preliminary agreement, so far as Breslauer is concerned, became a standing offer to the future corporation for such reasonable time as might be required to prepare, execute and file articles of incorporation giving it a legal existence.  In view of the dealings between these three persons looking to the formation of the corporation, and the fact that they were the only officers and stockholders of the corporation at the time of the adoption of the above resolution, we think that the proposition of Breslauer, mentioned in that resolution, means his proposition as contained in the preliminary agreement, which plainly contemplated the payment by the corporation of Breslauer's debts incurred in his business.  The writing upon the back of the paper, we think, should not be considered a part of the agreement or Breslauer's proposition, in the light of the conflicting evidence and the absence of signatures thereto.

Our attention is called to the decision of this court in *Mooney v. Mooney Co.*, 71 Wash. 258, 128 Pac. 225.  In that case, however, there was an offer made in writing to sell a business to a corporation in payment of the seller's

stock subscription, and an acceptance thereof by resolution of the corporation's board of trustees. The whole transaction being so evidenced in writing, and the writing being silent upon the question of the assumption of the debts of the business incurred previous to its transfer to the corporation, the court held that parol evidence could not be received to establish the assumption of such debts by the corporation, and that the writings did not evidence such an agreement. In the present case, we think the writings evidencing the contract for the transfer of Breslauer's business to the corporation, in the light of all the surrounding circumstances, does show a promise on the part of the corporation to pay these debts of Breslauer. The resolution of the trustees, above quoted, was in effect an acceptance of the terms of Breslauer's proposition and agreement to sell his business to the corporation, as contained in the preliminary agreement, the same as if that proposition had been first made after the actual coming into existence of the corporation. This conclusion, we think, finds support in 7 R. C. L. 60, and 3 Cook, Corporations (7th ed.), § 707.

We are of the opinion that the judgment should be affirmed. It is so ordered.

MAIN, BAUSMAN, and HOLCOMB, JJ., concur.