BERTA WILKINSON *v.* HOME BANK *et al.*

(*Nashville.* December Term, 1916.)

1. **BANKS AND BANKING.** Bank stock.  Debt of stockholder. Reservation of lien.

   While no statute creates a lien in favor of the bank upon its stock for debts of stockholders to it, yet, in the absence of statutory or charter provisions to the contrary, it may by by-law reserve such a lien. (*Post, pp.* 198-200.)

   Cases cited and approved: Holly Springs v. Pinson, 58 Miss., 241; Miller v. Farmers Milling Co., 78 Neb., 441: Lockwood v. Bank, 9 R. I., 308; Bank v. Bank, 77 Vt., 123; Whitfield v. Copper Co., 67 Wash., 286.

2. **BANKS AND BANKING.** Bank stock.  Reservation of lien. Notice.

   Where certificate of stock pledged to plaintiffs on its face provided that no shareholder should sell his stock while owing the bank, the pledgees were charged with notice of the lien. (*Post, pp.* 200, 201.)

3. **BANKS AND BANKING.** Bank stock.  Reservation of lien.

   A bank under its general authority to contract may acquire a lien on its stock to secure debts of its stockholders to it, in the absence of statutory or charter prohibition. (*Post, p.* —.)

   Cases cited and approved: Vansands v. Middlesex County Bank, 26 Conn., 144; Jennings v. Bank of California, 79 Cal., 323; Stafford v. Produce Exchange Banking Co., 61 Ohio St., 160; Buckmaster v. Consumers' Ice Co., 5 Daly, (N. Y.), 313; Reading Trust Co. v. Reading Iron Works, 137 Pa., 282; Costella v. Portsmouth Brewing Co., 69 N. H., 405; Gibbs v. Long Island Bank, 83 Hun. (N. Y.), 92: Farmers' & Traders' Bank v. Haney, 87 Iowa, 101; Des Moines Nat. Bank v. Warren County Bank, 97 Iowa, 204.

4. **BANKS AND BANKING.** Shares of stock. Issuance of shares.

A bank which on reorganization was informed by a stockholder that he had lost one certificate, and issued a new certificate in lieu thereof, did so at its peril. (*Post, pp.* 201, 202.)

5. **BANKS AND BANKING.** Bank stock. Reservation of lien. Possession of certificate.

Where the bank had reserved a lien upon its stock by by-laws, mere possession of a certificate of shares by the pledgee of the owner who was a debtor of the bank did not affect the lien. (*Post, pp.* 201, 202.)

FROM FRANKLIN.

Appeal from the Chancery Court of Franklin County.—F. H. MERCER, Chancellor.

T. L. STEWART and I. W. CRABTREE, for Wilkinson.

H. H. HORTON, H. M. TEMPLETON and J. B. TEMPLETON, for Bank.

MR. JUSTICE GREEN delivered the opinion of the Court.

This is a suit by the complainant to recover damages against the defendant Home Bank for the alleged conversion by the latter of certain shares of its own stock which complainant held as collateral security to a note. N. W. Carter was formerly the president of the Home Bank. At the time of the negotiation of the loan evidenced by complainant's note he was the owner of twenty shares of $100 each in the bank. Ten of these shares were represented by one certifi-

cate which Carter purchased from Mrs. M. E. Farris. He borrowed $500 from complainant's mother, and attached this certificate for ten shares of stock in the Home Bank, bought from Mrs. Farris, to the note which he executed for said loan.

Carter was indebted to the bank in a considerable amount. His indebtedness to the bank probably exceeded at all times the value of the stock that he held in that institution.

Among other by-laws, the bank adopted the following:

"Certificates of stock signed by the president or cashier shall be issued to stockholders and the certificates shall state upon their face that the stock is transferable only on the books of the bank, and no shareholder shall sell his stock while owing the bank, either direct or indirect."

The certificate of stock hypothecated for the loan to complainant's mother contained upon its face this provision:

"No shareholder shall sell his stock while owing the bank, either direct or indirect. Any one trading for same will be governed accordingly."

Complainant's note ran along for several years, Carter keeping the interest paid thereupon. The bank did not know that Carter had pledged this certficate of stock, but looked to the stock as security for its indebtedness against Carter under the by-law above set out.

While the note to complainant was outstanding and she held the ten shares of stock as collateral thereto, the capital stock of the defendant bank was increased. In lieu of the two certificates for ten shares each which Carter held, four certificates for five shares each were issued to him. He surrendered one certificate for ten shares and represented to the cashier of the bank that he had lost the other certificate for ten shares. As a matter of fact, the last-named certificate was in the hands of complainant or her mother as security for the note against Carter.

Carter sold the four certificates of stock for five shares each just before referred to, and the proceeds of these sales were applied to his indebtedness at defendant bank. S. M. Alexander, former cashier of the bank, and H. B. Alexander, the present cashier of the bank, both testify that every dollar from the sale of the said certificates went to the liquidation of the bank's claims against Carter. There is nothing in the record to contradict this testimony of the bank officials. Carter became involved in financial difficulties and severed his connection with the bank. He defaulted in payment of the interest on complainant's note; and she took the note with the certificate of stock to H. B. Alexander, present cashier of defendant bank. There is a controversy as to what transpired between these two. This, however, is not material. Complainant then went to see Carter, informing him that she had been told by Mr. Alexander that the certificate of stock which she held was not

good. Carter then induced her to turn the certificate over to him, saying that he would investigate the matter, and if he found the certificate was not good, he would give her other collateral to secure her note which he has never done. When he obtained possession of the old certificate for ten shares, Carter turned it over to the bank, and the bank refuses to surrender the same. Hence this suit.

The right of the bank to the possession of the old certificate for ten shares is not of any importance if its lien on the stock represented by this certificate was valid and superior to the rights of the complainant. If the bank had a lien on the holdings of Carter in the institution to secure his indebtedness which was superior to the lien of the complainant, it makes no difference who holds the old certificate for ten shares of stock. This certificate would be of no value in the hands of any one; for the bank has enforced its lien against the stock represented by the certificate and applied the proceeds to Carter's indebtedness to it.

We find nothing in the charter of defendant bank or in the general law of this State which prohibited the bank from adopting a by-law declaring a lien on shares of stock therein to secure the indebtedness of stockholders to the institution.

While there is no statute creating such a lien in Tennessee, in the absence of a statutory or charter provision to the contrary, we think a corporation may reserve by by-law a lien on its stock to se-

cure its claims against stockholders. Such is the great weight of authority.

"In a majority of the jurisdictions passing upon the question, it has been held to be a proper exercise of corporate power to enact a by-law giving the corporation a lien upon the stock of a member in-debted to the corporation, or a by-law reaching the same result by providing that a stockholder may not transfer his stock while indebted to the corporation." 7 R. C. L. (Corporations), section 241.

"By the weight of authority a by-law reserving such a lien, although not expressly authorized, is valid and creates a lien against the stockholders and against the transferees who do not pay value or who purchase with notice of the by-law, if reservation of the lien is not prohibited by the charter of the corporation or the general law. . . . Such a by-law, however, is not valid as against *bona-fide* transferees without notice where the only authority conferred upon the corporation by its charter or the general law is merely to prescribe and regulate the mode of transferring shares." 3 Clark & Marshall on Corporations, 760, 761.

See, also, 10 Cyc., 582; *Holly Springs* v. *Pinson,* 58 Miss., 241, 38 Am. Rep., 330; *Miller v. Farmers' Milling Co.,* 78 Neb., 441, 110 N. W., 995, 126 Am. St. Rep., 606; *Lockwood* v. *Bank,* 9 R. I., 308, 71 Am. Rep., 253; *Bank* v. *Bank,* 77 Vt., 123, 59 Atl., 197, 107 Am. St. Rep., 754; *Whitfield* v. *Copper Co.,* 67 Wash., 286, 123 Pac., 1078, 41 L. R. A. (N. S.), 187.

See, also, note 19 Ann. Cas., 704, where all the au-
thorities are collected.

There can be no question but that the complain-
ant and her mother were charged with notice of the
lien on its stock reserved by the bank to secure its
demands against its stockholders.   The certificate
pledged to them on its face provided that:

"No shareholder shall sell his stock while owing
the bank either direct or indirect.  Any one trading
for same will be governed accordingly."

In addition to its power to reserve such a lien on
its stock by by-law, a corporation, under its general
authority to contract, may acquire a lien on its stock
for the security of the debts of its stockholders to
it in the absence of a charter or statutory prohibi-
tion.  *Vansands* v. *Middlesex County Bank,* 26 Conn.,
144; *Jennings* v. *Bank of California,* 79 Cal., 323, 21
Pac., 852, 5 L. R. A., 233, 12 Am. St. Rep., 145;
*Stafford* v. *Produce Exchange Banking Co.,* 61 Ohio
St., 160, 55 N. E., 162, 76 Am. St. Rep., 371; *Buck-
master* v. *Consumers' Ice Co.,* 5 Daly (N. Y.), 313;
*Reading Trust Co.* v. *Reading Iron Works,* 137 Pa.,
282, 21 Atl., 169, 170; *Costella* v. *Portsmouth Brew-
ing Co.,* 69 N. H., 405, 43 Atl., 640; *Gibbs* v. *Long
Island Bank,* 83 Hun (N. Y.), 92, 31 N. Y. Supp., 406.

"If a corporation is given authority to regulate
transfers of its stock, or even without express au-
thority, it may, under its general power to contract,
reserve a lien on its shares for debts due from its
stockholders, by inserting a provision to such effect

in the certificate of stock. In such a case the stock-
holder's acceptance of the certificate containing the
reservation of a lien is an acceptance of that condi-
tion, and the lien therefore exists by force of a con-
tract between him and the corporation. And since
the condition appears upon the certificate, it is suffi-
cient to put a purchaser upon inquiry, and make it
his duty to ascertain whether the shares are subject
to a lien." 3 Clark & Marshall on Corporations,
1763.

The text above is supported by the cases last cited
and by *Farmers' & Traders' Bank* v. *Haney*, 87
Iowa, 101, 54 N. W., 61; *Des Moines Nat. Bank* v.
*Warren County Bank*, 97 Iowa, 204, 66 N. W., 154.
See, also, 10 Cyc., 582.

We must conclude, therefore, under the authori-
ties referred to, that the lien of defendant bank on
the stock of Carter to secure Carter's indebtedness
to it was superior to the lien of complainant on said
stock to secure Carter's indebtedness to her.

It may be conceded that the issuance of the new
certificates to Carter with the certificate for ten
shares outstanding in complainant's hands was at the
peril of defendant bank. As we have just seen, how-
ever, the bank had a prior lien on the ten shares of
stock represented by the certificate held by the com-
plainant. Complainant furthermore held the certifi-
cate with notice in law of the bank's lien, and the
bank's lien was not affected by her possession of the
certificate.

Other questions raised by the complainant have been considered and discussed orally. We find no error in the decree of the court of civil appeals dismissing complainant's bill as against defendant bank, and same must be affirmed.